1  E. Scott Palmer, Esq., SBN 155376
   Email: spalmer@pldlawyers.com
2  Frederick A. Haist, Esq., SBN 211322
   Email: fhaist@pldlawyers.com
3  PALMER, LOMBARDI & DONOHUE LLP
   888 West 6th Street, 12th Floor
4  Los Angeles, California 90017
   Phone: (213) 688-0430
5  Fax: (213) 688-0440

6  Attorneys for Defendant HOMECOMINGS FINANCIAL, LLC

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  CARLOS PACHECO, an individual,        )  Case No. C08 03002
                                           )
12              Plaintiff,                  )
                                           )
13      vs.                                 )  NOTICE OF REMOVAL OF
                                           )  CIVIL ACTION BY
14  HOMECOMINGS FINANCIAL, LLC,            )  DEFENDANT HOMECOMINGS
    a Delaware limited liability company;  )  FINANCIAL, LLC PURSUANT
15  MORTGAGEIT, INC., a New York           )  TO 28 U.S.C. SECTION 1441
    corporation; and DOES 1-100, Inclusive,)
16                                          )  [FEDERAL QUESTION]
                                           )
17              Defendants.                 )  [Complaint Filed: May 15, 2008]
                                           )
18  _____)

19      TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

20  DISTRICT OF CALIFORNIA:

21          PLEASE TAKE NOTICE that, pursuant to sections 1441 and 1331 of Title 28

22  of the United States Code, Defendant HOMECOMINGS FINANCIAL, LLC

23  ("Homecomings"), hereby removes the action entitled *Carlos Pacheco vs.*

24  *Homecomings Financial, LLC, et al.*, Superior Court of the State of California for

25  the County of Santa Cruz, case no. CV160271 (the "Action"), to the United States

26  District Court for the Northern District of California on the following grounds:

27          1.      On or about May 15, 2008, Plaintiff CARLOS PACHECO ("Plaintiff")

28  filed the Action in California state court. Plaintiff served Homecomings on or about

1  May 19, 2008.  A true and correct copy of the Summons and Complaint in the
2  Action is attached hereto as Exhibit A.  Based on the foregoing, Homecomings has
3  timely filed this Notice of Removal.  *See* 28 U.S.C. section 1446.

4        2.       According to the Santa Cruz County Superior Court website, located on
5  the internet at http://www.santacruzcourt.org/, Defendant MortgageIT, Inc. was
6  served on May 29, 2008.  Defendant MortgageIT Inc. has joined in this removal.
7  *See* Joinder In Notice Of Removal Of Action, attached as Exhibit C.

8        3.       The Action is a civil action of which this Court has original jurisdiction
9  under 28 U.S.C. section 1331 and is one which may be removed to this Court by
10 Homecomings pursuant to the provisions of 28 U.S.C. section 1441 in that the
11 Action involves a federal question that can be ascertained from the face of
12 Plaintiff's complaint.  Plaintiff, in his complaint, alleges the following claim which
13 involves federal questions and laws: Rescission under the Truth in Lending Act, 15
14 U.S.C. §§1601 *et seq.*  [Complaint ¶¶29-38, attached as Exhibit A.]

15       4.       Homecomings simultaneously is filing a copy of this Notice of
16 Removal with the Clerk of the Superior Court of the State of California, County of
17 Santa Cruz and it will be served on Plaintiff's counsel on June 18, 2008.
18 Homecomings will serve Plaintiff with copies of this Notice of Removal and the
19 notice filed in State Court.  A true and correct copy of written notice sent to the
20 Clerk of the Superior Court and Plaintiff is attached hereto as Exhibit B.
21 DATED:  June 1 ___, 2008

24 By _____
25    E. SCOTT PALMER
      FREDERICK A. HAIST
26    PALMER, LOMBARDI & DONOHUE LLP
      Attorneys for Defendant HOMECOMINGS
27    FINANCIAL, LLC

22
23
28

**EXHIBIT A**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HOMECOMINGS FINANCIAL, LLC, a Delaware limited liability company;
MORTGAGEIT, INC., a New York corporation;; and DOES 1-100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CARLOS PACHECO



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**

MAY 15 2008

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
California Superior Court, County of Santa Cruz
701 Ocean Street
Santa Cruz, CA 95060

CASE NUMBER:
*(Número del Caso):* 160271

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel J. Mulligan [SBN 103129], Jenkins, Mulligan & Gabriel LLP
225 Bush Street, Sixteenth Floor, San Francisco, CA 94104 Tel: (405) 982-8500

DATE: MAY 15 2008    Clerk, by ALEX CALVO / DEBORAH ROJAS , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* HOMECOMINGS FINANCIAL, LLC

under: ☐ CCP 416.10 (corporation)　　☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)　☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)　☐ CCP 416.90 (authorized person)
☒ other *(specify):* LLC
4. ☒ by personal delivery on *(date):* 05/19/2008

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

www.accesslaw.com

JENKINS MULLIGAN & GABRIEL LLP
Daniel J. Mulligan [SBN 103129]
225 Bush Street, Sixteenth Floor
San Francisco, California 94104
Telephone: (415) 982-8500
Facsimile: (415) 982-8515

THE LAW OFFICE OF SIMMONS & PURDY
Pamela D. Simmons [SBN 160523]
2424 Porter Street, Suite 10
Soquel, California 95073-2454
Telephone: (831) 464-6884
Facsimile: (831) 464-6886

Attorneys for Plaintiff,
CARLOS PACHECO

F I L E D

MAY 15 2008

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CRUZ

CARLOS PACHECO, an individual,

        Plaintiff,

     v.

HOMECOMINGS FINANCIAL, LLC,
a Delaware limited liability company;
MORTGAGEIT, INC., a New York
corporation; and DOES 1-100, Inclusive,

        Defendants.

CASE NO.: W 160271

**COMPLAINT FOR RESCISSION UNDER
FEDERAL TRUTH-IN-LENDING ACT**

Plaintiff Carlos Pacheco hereby brings this Complaint for rescission, monetary damages, and declaratory relief pursuant to the Federal Truth in Lending Act, 15 U.S.C. section 1601 *et seq.* ("TILA") and Regulation Z (12 C.F.R. 226), against Defendants, and by this Complaint alleges as follows:

///

— 1 —

*Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

1

2                                    **I.  INTRODUCTION**

3          1.        Defendant MortgageIT, Inc. ("MortgageIT") violated TILA and Regulation Z

4    in connection with a loan transaction with Plaintiff.  Defendant Homecomings Financial, LLC

5    ("Homecomings"), upon information and belief, now holds the promissory note at issue.

6    Plaintiff brings this Complaint pursuant to federal law for rescission or a determination that

7    Plaintiff has properly rescinded any security interest held on Plaintiff's Property (defined

8    below) held by Defendants and to recover statutory penalties and other damages as provided

9    by law.

10                              **II.  JURISDICTION AND VENUE**

11         2.        Jurisdiction is proper in this county in that Plaintiff's claims arose in this

12   County, the property at issue is located in this County, and the deed of trust at issue was

13   recorded in this County. This Court has concurrent jurisdiction of the subject matter of this

14   Complaint.

15         3.        The amount in controversy exceeds the jurisdictional minimum of this Court.

16                                      **III.  PARTIES**

17         4.        Plaintiff Carlos Pacheco is a natural person who owns and resides at the real

18   property commonly described as 855 Soquel San Jose Road, Soquel, California (hereafter

19   "the Property").  The Property is Plaintiff's principal and family residence.

20         5.        Plaintiff is a "consumer," as defined in TILA and Regulation Z.

21         6.        Plaintiff is informed and believes, and on that basis alleges, that Defendant

22   Homecomings is a Delaware limited liability company that conducts consumer loan operations

23   in California, including the issuance of loans secured by deeds of trust.

24         7.        Plaintiff is further informed and believes, and on that basis alleges, that

25   Homecomings is a "creditor" with regard to the secured loan that is the subject of this action,

26   as defined in TILA and Regulation Z (12 C.F.R. 226.23).

27                                        – 2 –

28   *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

1

2          8.      Plaintiff is informed and believes, and on that basis alleges, that Defendant

3    MortgageIT is a New York corporation that conducts consumer loan operations in California,

4    including the issuance of loans secured by deeds of trust.

5          9.      Plaintiff is further informed and believes, and on that basis alleges, that

6    MortgageIT is a "creditor" with regard to the secured loan that is the subject of this action,

7    as defined in TILA and Regulation Z (12 C.F.R. 226.23).

8          10.     At all times relevant to the claims in this Complaint, Defendants' employees

9    or agents acted with the authority of their employers and/or principals.

10         11.     Plaintiff does not know the true names and capacities of the Defendants sued

11   herein as Does 1-100, inclusive, and therefore Plaintiff sues said Defendants by the foregoing

12   fictitious names. When the true names and capacities of these Defendants become known,

13   Plaintiff will amend this Complaint to include such true names and capacities and, if necessary,

14   will seek leave to amend to add additional charging allegations against them. Plaintiff is

15   informed and believes, and thereon alleges, that Does 1-100, inclusive, include persons who

16   conspired or aided and abetted the other Defendants.

17         12.     Plaintiff alleges that each Defendant, including those sued herein as Does 1-100,

18   was acting as an agent or representative of every other Defendant in doing all of the acts

19   described in this Complaint and at all times was acting within the course and scope of such

20   agency or representative capacity in doing the acts described herein.

21         13.     At all times herein mentioned, Defendants, and each of them, were agents or

22   joint venturers of each of the other Defendants and, in doing the acts alleged herein, were

23   acting within the course and scope of such agency. Each Defendant had actual and/or

24   constructive knowledge of the acts of each of the other Defendants and ratified, approved

25   and/or retained the benefits of said wrongful acts.

26

27                                          – 3 –

28   *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

1

2                          IV. **FACTUAL ALLEGATIONS**

3        14.    Plaintiff owns the Property, which is Plaintiff's principal and family residence.

4        15.    Prior to entering into the loan transaction with Defendant MortgageIT, the

5   Property was subject to a mortgage with Countrywide Home Loans in the approximate amount

6   of $506,293.16.

7        16.    On November 7, 2005, Plaintiff flew to Southern California and drove to the

8   office of the Real Estate Loan Centers in Apple Valley, California, to sign loan documents to

9   secure a home loan from defendant MortgageIT in the amount of $607,200.00 (hereafter

10  "the Loan"). Later on the same day, Plaintiff flew back to Northern California.

11       17.    On November 7, 2005, at the offices of Real Estate Loan Centers, Plaintiff

12  signed several documents, including an Adjustable Rate Note in favor of Defendant

13  MortgageIT and a Deed of Trust securing Plaintiff's obligations under such Adjustable Rate

14  Note.

15       18.    A notary present during Plaintiff's signing notarized Plaintiff's signature on the

16  Deed of Trust and dated it as November 4, 2005, which was three days earlier than the actual

17  date that Plaintiff signed his loan documents. Plaintiff, who resides in Northern California,

18  was not present at the Real Estate Loan Centers office on November 4, 2005.

19       19.    While at the offices of Real Estate Loan Centers on November 7, 2005, Plaintiff

20  received a pre-copied set of Loan documents, all unsigned.

21       20.    Included in this set of the Loan documents were two Notice of Right To Cancel

22  forms with printed dates of October 24, 2005. One of the two forms is signed and has a

23  handwritten date of October 27, 2005. Neither of these forms indicates the last day on which

24  Plaintiff could exercise his right to rescind the Loan. True and correct copies of the Notice of

25  Right to Cancel forms that Plaintiff received are attached hereto as <u>Exhibit A</u>.

26       21.    The Loan funded on November 9, 2005, two days after Plaintiff signed his Loan

27                                    – 4 –

28   *Pacheco v. Homecomings Financial, LLC, et al.*                          Complaint

1    documents and one day prior to the date on which Plaintiff's actual right to rescind the Loan

2    pursuant to TILA and Regulation Z expired.

3       22.    The Deed of Trust securing the Loan was recorded against the Property on

4    November 10, 2005, as Document No. 2005-0079205 in the Official Records of Santa Cruz

5    County. Funds from the Loan were used to pay in full the Countrywide loan that previously

6    encumbered the Property.

7       23.    To obtain the Loan, Plaintiff paid transaction fees and broker fees totaling

8    approximately $5,479.57, not including a "loan discount" fee of $15,180.00 paid to Real Estate

9    Loan Centers outside of closing.

10      24.    Plaintiff is informed and believes, and on that basis alleges, that, after the

11   recordation of the Deed of Trust securing the Loan, MortgageIT's interest in the Loan was

12   assigned to Defendant Homecomings.

13      25.    Pursuant to TILA, an assignee of a creditor's interest is liable for rescission to

14   the same extent as the assignor (15 USC section 1641(c): "[a]ny consumer who has the right to

15   rescind a transaction under section 1635 of this title may rescind the transaction as against any

16   assignee of the obligation.").

17      26.    On April 20, 2007, Plaintiff gave Defendant MortgageIT a valid notice of

18   rescission of the Loan, a true and correct copy of which is attached hereto as <u>Exhibit B</u>.

19   Defendant MortgageIT failed and refused to accept Plaintiff's valid notice of rescission or

20   take the required necessary actions thereafter.

21      27.    On April 23, 2007, Plaintiff gave Defendant Homecomings a valid notice of

22   rescission of the Loan, a true and correct copy of which is attached hereto as <u>Exhibit C</u>.

23   Defendant Homecomings failed and refused to accept Plaintiff's valid notice of rescission or

24   take the required necessary actions thereafter.

25

26

27                                   – 5 –

1

2                              **V.  CAUSE OF ACTION**

3              Violation of Regulation Z, 15 U.S.C. §§ 1601 et. seq.; 12 C.F.R.226
                                    (Against All Defendants)
4

5          28.     Plaintiff realleges and incorporates by reference each and every previous

6    paragraph of this Complaint as though set forth in full.

7          29.     This consumer credit transaction was subject to the Plaintiff's right of rescission

8    under TILA, as described in 15 U.S.C. section 1635, and Regulation Z section 226.23 (12

9    C.F.R. § 226.23).

10         30.     In the course of this consumer credit transaction, Defendants violated 15 U.S.C.

11   section 1635(a) and Regulation Z section 226.23(b) by failing to deliver to Plaintiff two copies

12   of the notice of the right to cancel that clearly and conspicuously disclosed the date of the

13   transaction and the date the rescission period expired.  The notices of right to cancel that

14   Plaintiff received were falsely dated and did not indicate the final date to rescind the Loan.

15         31.     Borrowers retain a continuing right to rescind a loan transaction until the third

16   business day after receipt of both the notice of the right to rescind as described herein and the

17   notice of all "material" disclosures as described herein, pursuant to 15 U.S.C. § 1635(a) and

18   Regulation Z § 226.23(a)(3).  Plaintiff has never received proper notices and, thus, retains the

19   right to rescind.

20         32.     Plaintiff's April 20, 2007, and April 23, 2007, notices of rescission with respect

21   to the Loan were valid and timely notices of rescission under applicable law.

22         33.     Defendants failed to accept Plaintiff's valid notices of rescission in violation of

23   15 U.S.C. section 1635, and Regulation Z section 226.23.

24         34.     Defendants failed to accept Plaintiff's notices of rescission within the statutorily

25   prescribed time period, as set forth in 15 U.S.C. section 1636 and Regulation Z section 226.23.

26         35.     Defendants failed to take any action necessary or appropriate to reflect the

27                                          – 6 –

1  termination of any security interest created in connection with the Loan, including the security

2  interest described herein, as required by 15 U.S.C. section 1635(b) and Regulation Z section

3  226.23(d)(2).

4      36.    Defendants failed to return to Plaintiff any money or property given by Plaintiff

5  to anyone, including to Defendants, as required by 15 U.S.C. section 1635(b) and Regulation Z

6  section 226.23(d)(2).

7      37.    As a result of the violations by Defendants under TILA and Regulation Z, as

8  described herein, Plaintiff is entitled to rescind the Loan transaction.

9      38.    As a result of the violations by Defendants under TILA and Regulation Z, as

10  described herein, Plaintiff is entitled to terminate any security interest in the property created

11  under the loan transactions with Defendants, under 15 U.S.C. section 1635 and Regulation Z

12  section 226.23. As a result of the violations by Defendants under TILA and Regulation Z, as

13  described herein, Plaintiff is entitled to the return of any money or property given by Plaintiff

14  to anyone, including to Defendants, in connection with the Loan transaction with Defendants,

15  under 15 U.S.C. section 1635 and Regulation Z section 226.23.

16      39.    As a result of the violations by Defendants under TILA and Regulation Z, as

17  described herein, Plaintiff is entitled to retain proceeds to vest in Plaintiff, under 15 U.S.C.

18  section 1635 and Regulation Z section 226.23.

19                                      **PRAYER FOR RELIEF**

20      WHEREFORE, Plaintiff respectfully requests that this Court to:

21      1.    Issue a permanent injunction enjoining and restraining Defendants, their

22  partners, agents, trustees, servants, assigns, officers, employees, attorneys, representatives, and

23  any and all others acting at their direction, on their behalf, in concert with them, or participating

24  with them, from foreclosing on the property, engaging in, or performing, directly or indirectly,

25  any and all acts in violation of TILA and Regulation Z, and from committing all unlawful

26  practices complained of herein;

27                                            – 7 –

1

2          2.      Award Plaintiff actual, compensatory, statutory and punitive damages in an

3    amount to be determined at trial;

4          3.      Issue a declaratory judgment that the Defendants' actions have violated federal

5    truth-in-lending laws and, as a result the security interest and note are void;

6          4.      Award Plaintiff the costs of suit and reasonable attorney's fees; and

7          5.      Grant such other and further relief as the Court deems just and proper.

8

9    Date: April 17, 2008.                    JENKINS MULLIGAN & GABRIEL LLP

10                                            &

11                                            LAW OFFICE OF SIMMONS & PURDY

12

13                                      By: _____

14                                            William J. Purdy, III
                                              Attorneys for Plaintiff
15                                            CARLOS PACHECO

16

17

18

19

20

21

22

23

24

25

26

27                                      — 8 —

28   *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

1

## JURY TRIAL DEMAND

2       Plaintiff Carlos Pacheco requests a trial by jury on all claims so triable.

3   Dated:  April 17, 2008.           JENKINS MULLIGAN & GABRIEL LLP

4                                        &

5

6                            LAW OFFICE OF SIMMONS & PURDY

7

8                         By                                        
                                                  William J. Purdy, III

9                                          Attorneys for Plaintiff
                                          CARLOS PACHECO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                      – 9 –

28   *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

**EXHIBIT A**

Loan Name: CARLOS PACHECO           LOAN NO: 40443787

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

## EXHIBIT "A"
### LEGAL DESCRIPTION OF PROPERTY

Real property in the unincorporated area of the County of Santa Cruz, State of California, described as follows:

PARCEL ONE:

BEGINNING AT A STATION IN THE CENTERLINE OF THE SOQUEL-SAN JOSE ROAD DISTANT THEREON SOUTH 13 DEGREES 30' WEST 108 FEET FROM THE MOST NORTHERN CORNER OF PARCEL TWO OF THE LANDS CONVEYED BY LOUIS J. KLINDT , ET UX., TO VESTA MARGARET DALTON, BY DEED DATED SEPTEMBER 15, 1943, RECORDED NOVEMBER 1, 1943 IN VOLUME 455, PAGE 245, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; RUNNING THENCE SOUTH 76 DEGREES 30' EAST 91.67 FEET TO A STATION; THENCE SOUTH 13 DEGREES 30' WEST 0.80 FEET TO A STATION; THENCE SOUTH 10 DEGREES WEST 49.20 FEET TO A STATION; THENCE NORTH 76 DEGREES 30' WEST 91.67 FEET TO A STATION IN THE CENTERLINE OF THE SOQUEL-SAN JOSE ROAD; THENCE NORTHEASTERLY ALONG THE CENTERLINE OF SAID ROAD 50 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION CONTAINED IN THE DEED FROM BERT T. BURCH, ET UX., TO FRANCES BURCH, RECORDED MARCH 11,1958 IN VOLUME 1175, PAGE 226, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

PARCEL TWO:

A RIGHT OF WAY FOR A PIPE LINE AND THE RIGHT TO ENTER UPON THE LANDS OF FRANCES J. LOVELY, FORMERLY FRANCES BURCH FOR THE PURPOSES OF LAYING, MAINTAINING, REPAIRING OR RENEWING SAID PIPE LINE AND SERVICING, REPAIRING OR OTHERWISE MAINTAINING AND REPAIRING, PUMPING PLANT, AS GRANTED IN THAT CERTAIN MEMORANDUM OF AGREEMENT RECORDED MARCH 11, 1958 IN BOOK 1175, PAGE 223, OFFICIAL RECORDS.

APN: 104-211-17

**EXHIBIT B**

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:                              Loan Number: 40443787

Borrower: CARLOS PACHECO

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 85073

---

YOUR RIGHT TO CANCEL:

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.  the date of the transaction, which is    OCTOBER 24, 2005                                    ; or
2.  the date you receive your Truth in Lending disclosures;  or   OCTOBER 24, 2005
3.  the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor: MORTGAGEIT, INC.

at          8880 RIO SAN DIEGO DR #250
            SAN DIEGO, CA  92108-

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

                              I WISH TO CANCEL

_____        _____
Date                             Borrower's Signature

---

### ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: 10/27/05          CARLOS PACHECO
                        Borrower's Name

                        CARLOS PACHECO
                                                Borrower's Signature

LENDER SUPPORT SYSTEMS INC. GEN-020.GEN (07/05)

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:                      Loan Number: 4044____

Borrower: CARLOS PACHECO

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

**YOUR RIGHT TO CANCEL:**
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.  the date of the transaction, which is    OCTOBER 24, 2005                    ; or
2.  the date you receive your Truth in Lending disclosures;  or  OCTOBER 24, 2005
3.  the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:   MORTGAGEIT, INC.

at          8860 RIO SAN DIEGO DR #250
            SAN DIEGO, CA 92108-

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above).  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

                                I WISH TO CANCEL

_____        _____
        Date                              Borrower's Signature

### ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: _____        CARLOS PACHECO
                            _____
                            Borrower's Name

                            CARLOS PACHECO
                            _____
                            Borrower's Signature

                            LENDER SUPPORT SYSTEMS INC. ___-___ SEE (07/05)

**EXHIBIT C**

Recording Requested By:
MORTGAGEIT

Return To:
MORTGAGEIT

1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Prepared By:

---

[Space Above This Line For Recording Data]

---

# DEED OF TRUST

LOAN NO.:   40443787                                          MIN   1001128557085065J
ESCROW NO.:   05-1039-NL                                      MERS Phone: 1-838-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          NOVEMBER 04, 2005
together with all Riders to this document.
(B) "Borrower" is
CARLOS PACHECO, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY


Borrower's address is 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA  95073
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of  NEW YORK

---

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP-6A(CA) (0207)                           Page 1 of 16          LENDER SUPPORT SYSTEMS, INC. MERSCA.NEW (05/05)

Lender's address is

25 MAIDEN LANE 6TH FLOOR, NEW YORK, NY 10038-

(D) "Trustee" is
FIRST AMERICAN TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    NOVEMBER 04, 2005
The Note states that Borrower owes Lender

SIX HUNDRED SEVEN THOUSAND TWO HUNDRED AND NO/100 X X X X X X X X X X X X X X X X X X

Dollars

(U.S. $ 607,200.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    DECEMBER 01, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider    [ ] Condominium Rider         [ ] 1-4 Family Rider
[ ] Graduated Payment Rider   [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] Balloon Rider             [ ] Rate Improvement Rider    [ ] Second Home Rider
[ ] Other(s) [specify]


(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SANTA CRUZ :

[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 104-211-17                                  which currently has the address of
                     855 SOQUEL SAN JOSE ROAD]                                    [Street]
          SOQUEL                      [City] , California      95073      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0207)                         Page 3 of 15                        Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials:_____

VMP-6A(CA) (0207)    Page 9 of 15    Form 3005 1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

VMP-6A(CA) (0207)                    Page 12 of 15                    Form 3005  1/01

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                          -Witness

_____
                                          -Witness

_____(Seal)        _____(Seal)
CARLOS PACHECO        -Borrower        -Borrower

_____(Seal)        _____(Seal)
                       -Borrower        -Borrower

_____(Seal)        _____(Seal)
                       -Borrower        -Borrower

_____(Seal)        _____(Seal)
                       -Borrower        -Borrower

State of  CALIFORNIA
County of                                         } ss.

On                          before me,
                                                    personally appeared

CARLOS PACHECO


                                          , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_____ (Seal)


VMP-6A(CA) (0207)                    Page 35 of 15                    Initials:_____
                                                                     Form 3005  1/01

**EXHIBIT D**

Law Office Of
# Simmons & Purdy

mela D. Simmons
a J. Purdy, III

Phone: 831.464.688
Fax: 831.464.688
pamela@pamelaw.co
bill@pamelaw.co

April 20, 2007

Mortgageit, Inc.
8880 Rio San Diego Drive
Suite 250
San Diego, CA 92108
**SENT VIA CALIFORNIA OVERNIGHT**

> Re: ***Carlos Pacheco***
> ***Loan #40443787 dated October 24, 2005 for $607,200.00***
> ***Rescission of Mortgage Loan***
> ***Pursuant to Federal Truth in Lending Act***

Dear Mortgageit, Inc.:

I represent Mr. Pacheco in this matter as it relates to a loan made by Mortgageit, Inc. which is secured by Mr. Pacheco's home. Please be informed that for the reasons set forth below, Mr. Pacheco hereby rescinds his loan pursuant to the Federal Truth in Lending Act. In addition to the claims listed below, there may be additional violations of the Federal Truth in Lending Act (hereinafter "TILA") and state lending laws of which we are not yet aware.

On or about October 24, 2006, Mr. Pacheco actually flew from his home in Soquel, California to Southern California at his own expense. He had been promised a "great deal" on a loan and that it would be worth it to his family to make this trip. When Mr. Pacheco arrived at the Ontario airport, he was picked up by his cousin. From there he was driven to Apple Valley, California to sign his loan documents.

In the offices of the Real Estate Loan Center, Mr. Pacheco signed the loan documents. When he left, he was given a copy of the loan documents that he had executed. These copies had been "pre-copied". Included with the copies of the loan documents were two (2) Notice of Right to Cancel forms given to Mr. Pacheco pursuant to TILA. I am enclosing copies of each of the Right to Cancels received by Mr. Pacheco for your review.

Mortgageit, Inc.
April 20, 2007
Page 2


The Federal Truth in Lending Act, 15 U.S.C., Sec. 1635, as implemented
under Regulation Z requires that each borrower receive two (2) copies of a
properly filled out Right to Cancel. Mr. Pacheco should have received two (2)
correctly filled out copies of the statutorily required form. However, a review of
his file demonstrates that he received two defective copies. The copies do not
indicate the final date to cancel. Mr. Pacheco hereby informs you that he is
rescinding his loan due to the failure of Mortgageit, Inc. to provide him with
two copies each, properly filled out, of his Notice of Right to Cancel, as required
under 15 U.S.C., Sec. 1635, and Reg. Z.

As a result of this rescission notice Mortgageit, Inc. has twenty (20) days
from its receipt of this notice to return to my client all monies paid in
connection with the terms of the mortgage loan which is the subject of this
letter. My client hereby requests an itemization of such monies. We further
make a claim for civil penalties to the extent allowed by law. Upon your
discharge of Mortgageit, Inc.'s statutory duties, my client will perform all
necessary actions required by 15 U.S.C. Sec. 1635(b); Reg. Z, Secs.
226.15(d)(3), 226.23(d)(3).

Failure to return to my client all monies due may further subject
Mortgageit, Inc. to additional actual and statutory damages. Additionally,
please note that the statute gives the borrower the right to recover attorney fees
and costs should they be forced to obtain relief from the courts due to
Mortgageit, Inc.'s failure to comply with the statute.

                    Sincerely,

                    Pamela D. Simmons
                    Attorney at Law


PDS:cri
/enclosures
cc: client

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 404-43727

Borrower: CARLOS PACHECO

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

**YOUR RIGHT TO CANCEL:**

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is    OCTOBER 24, 2005
2. the date you receive your Truth in Lending disclosures;  or  OCTOBER 24, 2005                        ; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:    MORTGAGEIT, INC.

at

        8830 RIO SAN DIEGO DR #250
        SAN DIEGO, CA  92108-

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

                                                I WISH TO CANCEL

_____        _____
          Date                                Borrower's Signature

## ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: 10/27/05

                        CARLOS PACHECO
                        Borrower's Name

                        _____
                        CARLOS PACHECO
                                                Borrower's Signature

LENDER SUPPORT SYSTEMS INC. RES-CED.CA (07/05)

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:                                   Loan Number: 40443787

Borrower: CARLOS PACHECO

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

**YOUR RIGHT TO CANCEL:**
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is     OCTOBER 24, 2005
2. the date you receive your Truth in Lending disclosures; or  OCTOBER 24, 2005                    ; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above. But you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:  MORTGAGEIT, INC.

at
                8680 RIO SAN DIEGO DR #250
                SAN DIEGO, CA 92108-
You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

                                    I WISH TO CANCEL

_____        _____
        Date                              Borrower's Signature

## ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE _____        CARLOS PACHECO
                            Borrower's Name


                            CARLOS PACHECO

                                    Borrower's Signature

LENDER SUPPORT SYSTEMS INC. GEN-020.GEN (07/05)

**EXHIBIT E**

Law Office Of
# Simmons & Purdy

nela D. Simmons
a J. Purdy, III

Phone: 831.464.688
Fax: 831.464.588
pamela@pamelaw.com
bill@pamelaw.com

April 23, 2007

Homecomings Financial
P.O. Box 890036
Dallas, TX 75389-0036
**Sent Via U.S. Certified Mail**

Re:   ***Carlos Pacheco***
      ***Loan #40443787 dated October 24, 2005 for $607,200.00***
      ***Rescission of Mortgage Loan***
      ***Pursuant to Federal Truth in Lending Act***

Dear Homecomings Financial:

As the assignee on this loan, I am sending this demand to you.  I represent Mr. Pacheco in this matter as it relates to a loan made by Mortgageit, Inc. which is secured by Mr. Pacheco's home.  Please be informed that for the reasons set forth below, Mr. Pacheco hereby rescinds his loan pursuant to the Federal Truth in Lending Act.  In addition to the claims listed below, there may be additional violations of the Federal Truth in Lending Act (hereinafter "TILA") and state lending laws of which we are not yet aware.

On or about October 24, 2006, Mr. Pacheco actually flew from his home in Soquel, California to Southern California at his own expense. He had been promised a "great deal" on a loan and that it would be worth it to his family to make this trip. When Mr. Pacheco arrived at the Ontario airport, he was picked up by his cousin. From there he was driven to Apple Valley, California to sign his loan documents.

In the offices of the Real Estate Loan Center, Mr. Pacheco signed the loan documents. When he left, he was given a copy of the loan documents that he had executed.  These copies had been "pre-copied". Included with the copies of the loan documents were two (2) Notice of Right to Cancel forms given to Mr. Pacheco pursuant to TILA. I am enclosing copies of each of the Right to Cancels received by Mr. Pacheco.

Homecomings Financial
April 23, 2007
Page 2


The Federal Truth in Lending Act, 15 U.S.C., Sec. 1635, as implemented
under Regulation Z requires that each borrower receive two (2) copies of a
properly filled out Right to Cancel. Mr. Pacheco should have received two (2)
correctly filled out copies of the statutorily required form. However, a review of
his file demonstrates that he received two defective copies. The copies do not
indicate the final date to cancel. Mr. Pacheco hereby informs that he is
rescinding his loan due to the failure of Mortgageit, Inc. to provide him with
two copies each, properly filled out, of his Notice of Right to Cancel, as required
under 15 U.S.C., Sec. 1635, and Reg. Z.

As a result of this rescission notice Mortgageit, Inc. has twenty (20) days
from its receipt of this notice to return to my client all monies paid in
connection with the terms of the mortgage loan which is the subject of this
letter.  My client hereby requested an itemization of such monies. We further
made a claim for civil penalties to the extent allowed by law.  Upon discharge of
Mortgageit, Inc.'s  statutory duties, my client  will  perform all necessary actions
required by 15 U.S.C. Sec. 1635(b); Reg. Z, Secs. 226.15(d)(3), 226.23(d)(3).

Failure to return to my client all monies due may further subject
Mortgageit, Inc. to additional actual and statutory damages. Additionally,
please note that the statute gives the borrower the right to recover attorney fees
and costs should they be forced to obtain relief from the courts due to
Mortgageit, Inc.'s failure to comply with the statute.

Sincerely,

Pamela D. Simmons
Attorney at Law


PDS:crl
/enclosures
cc: client

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 40443757

Borrower: CARLOS PACHECO

Property Address: 555 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

**YOUR RIGHT TO CANCEL:**
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home.
You have a legal right under federal law to cancel this transaction, without cost, within three business
days from whichever of the following events occurs last:

1.  the date of the transaction, which is   OCTOBER 24, 2005
2.  the date you receive your Truth in Lending disclosures;  or  OCTOBER 24, 2005                ; or
3.  the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar
days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage,
lien, or security interest on/in your home has been cancelled, and we must return to you any money or
property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above,
but you must then offer to return the money or property. If it is impractical or unfair for you to return the
property, you must offer its reasonable value. You may offer to return the property at your home or at
the location of the property. Money must be returned to the address below. If we do not take possession
of the money or property within 20 calendar days of your offer, you may keep it without further
obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:   MORTGAGEIT, INC.

at
          8880 RIO SAN DIEGO DR #250
          SAN DIEGO, CA 92108-

You may use any written statement that is signed and dated by you and states your intention to cancel, or
you may use this notice by dating and signing below. Keep one copy of this notice because it contains
important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of
_____ (or midnight of the third business day following the latest of the
three events listed above). If you send or deliver your written notice to cancel some other way, it must be
delivered to the above address no later than that time.

                              I WISH TO CANCEL

_____          _____
          Date                          Borrower's Signature

### ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED
ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE
FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE  10/27/05

          CARLOS PACHECO
          Borrower's Name

          _____
          CARLOS PACHECO

                              Borrower's Signature

# NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 40442787

Borrower: CARLOS PACHECO

Property Address: 355 SOQUEL SAN JOSE ROAD, SOQUEL, CA, 95072

YOUR RIGHT TO CANCEL:
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is    OCTOBER 24, 2005
2. the date you receive your Truth in Lending disclosures; or OCTOBER 24, 2005                    ; or
3. the date you receive this notice of your right to cancel

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:   MORTGAGEIT, INC.

at .
            8880 RIO SAN DIEGO DR #250
            SAN DIEGO, CA  92108-
You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

                                        I WISH TO CANCEL

_____                    _____
       Date                                   Borrower's Signature

## ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: _____            CARLOS PACHECO
                                 _____
                                 Borrower's Signature

                                 CARLOS PACHECO
                                 _____
                                 Borrower's Signature

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ | | *For Court Use Only* |
|---|---|---|
| Santa Cruz Branch<br>701 Ocean Street, Room 110<br>Santa Cruz, CA 95060 | Watsonville Branch<br>1Second Street, Room 300<br>Watsonville, CA 95076 | **F I L E D**<br>MAY 15 2008<br>ALEX CALVO, CLERK<br>BY DEBORAH ROJAS<br>DEPUTY, SANTA CRUZ COUNTY |
| PLAINTIFF:   CARLOS PACHECO | | |
| DEFENDANT:  HOMECOMINGS FINANCIAL LLC | | |
| CASE MANAGEMENT INFORMATION AND SETTING | | CASE NO:<br>CISCV160271 |

This case is in Santa Cruz County's Case Management Program. It is the Duty of each party to be familiar with the california rules of court and the date, time and place of the first case management conference.

This notice must be served with the summons on all defendants and cross-defendants. Notice of any other pending case management conference must be served on subsequently named defendants and corss-defendants.


**ATTENTION** **DEFENDANT:** **YOU HAVE 30 DAYS AFTER THE SUMMONS IS SERVED ON YOU TO FILE A RESPONSE TO THE COMPLAINT. THE DATE BELOW DOES NOT EXTEND THE TIME TO FILE A RESPONSE. SEE THE SUMMONS FOR INSTRUCTIONS FOR RESPONDING TO THE SUMMONS AND COMPLAINT.**


| The first Case Management Conference hearing date is: | | |
|---|---|---|
| **Date:  09/12/08** | **Time:  8:29** | **Department No.:   4** |
| Address of the Court: ☑ 701 Ocean Street, Santa Cruz, California | | ☐ 1 Second Street, Watsonville, California |

*Telephonic court appearances are provided through CourtCall to the court. To make arrangments to appear at the Case Management Conference by telephone, please call the program administrator for CourtCall at (310) 572-4670 or (888) 882-6878 at least five (5) court days prior to the hearing. DO NOT CALL THE COURT.*

# THE LAWYER'S PLEDGE

In order to raise the standards of civility and professionalism among counsel and between the Bench and the Bar, I hereby pledge the following:

1. To at all times comply with the California Rules of Professional Conduct;
2. To honor all commitments;
3. To be candid in all dealings with the court and counsel;
4. To uphold the integrity of our system of justice and not compromise personal integrity for the sake of a client, case or cause;
5. To seek to accomplish the client's legitimate goals by the most efficient and economical methods possible;
6. To act in a professional manner at all times, to be guided by a fundamental sense of fair play in all dealings with counsel and the court, and to be courteous and respectful to the court;
7. To be on time;
8. To be prepared for all court appearances - to be familiar with all applicable court rules;
9. To adhere to the time deadlines set by statute, rule, or order;
10. To avoid visual displays of pique in response to rulings by the court;
11. To discourage and decline to participate in litigation or tactics that are without merit or are designed primarily to harass or drain the financial resources of the opposing party;
12. To avoid any communications with the judge concerning a pending case unless the opposing party or lawyer is present, or unless permitted by court rules or otherwise authorized by law;
13. To refrain from impugning the integrity of the judicial system, its proceedings, or its members;
14. To treat all court personnel with the utmost civility and professionalism;
15. To remember that conflicts with opposing counsel are professional and not personal - vigorous advocacy is not inconsistent with professional courtesy;
16. To refrain from derogatory statements or discriminatory conduct on the basis of race, religion, gender, sexual orientation or other personal characteristic;
17. To treat adverse witnesses and litigants with fairness and due consideration;
18. To conduct discovery proceedings as if a judicial officer were present;
19. To meet and confer with opposing counsel in a genuine attempt to resolve procedural and discovery matters;
20. To not use discovery to harass the opposition or for any other improper purpose;
21. To not arbitrarily or unreasonably withhold consent to a just and reasonable request for cooperation or accommodation;
22. To not attribute to an opponent a position not clearly taken by that opponent;
23. To avoid unnecessary "confirming" letters and to be scrupulously accurate when making any written confirmation of conversations or events;
24. To not propose any stipulation in the presence of the trier of fact unless previously agreed to by the opponent;
25. To not interrupt the opponent's legal argument;
26. To address opposing counsel, when in court, only through the court;
27. To not seek sanctions against or disqualification of another lawyer to attain a tactical advantage or for any other improper purpose;
28. To not schedule the service of papers to deliberately inconvenience opposing counsel;
29. To refrain, except in extraordinary circumstances, from using the fax machine to demand immediate responses for opposing counsel.

# ADR INFORMATION PACKAGE

Included in this package:

- Cover Page

- Alternative Dispute Resolution Program Notice

- Local Form SUPCV 1012
  (Stipulation and Order to Attend Judicial Mediation or Private Arbitration)

## ATTENTION PLAINTIFFS/CROSS-COMPLAINANTS

**PLAINTIFFS SHALL SERVE A COPY OF THIS ADR INFORMATION PACKAGE ON EACH DEFENDANT ALONG WITH THE COMPLAINT. CROSS-COMPLAINANTS SHALL SERVE A COPY OF THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES TO THE ACTION ALONG WITH THE CROSS-COMPLAINT (CRC 3.221)**

# ALTERNATIVE DISPUTE RESOLUTION PROGRAM NOTICE
# SANTA CRUZ SUPERIOR COURT
# LOCAL RULE 7.1.02(a)

TO:    ALL CIVIL LITIGANTS

RE:    JUDICIAL MEDIATION PROGRAM OF SANTA CRUZ OR OPTION FOR
       PRIVATE ARBITRATION

Alternate Dispute Resolution (ADR) is a process, other than formal litigation, in which a neutral person assists the parties in resolving their dispute. Santa Cruz County's ADR process is Judicial Mediation. If the parties agree to Mediation, it is the policy of this Court to assign appropriate cases to mediation without making a determination of the value of the case.

Appropriate cases will be assigned to Judicial Mediation from the Case Management Conference Calendar. The parties may stipulate to Mediation prior to the Case Management Conference by written stipulation on local form SUPCV 1012. Case Management Conference Statements and requests for continuances should be submitted at least ten days in advance of the hearing.

FOR MORE INFORMATION REGARDING SANTA CRUZ COUNTY'S MEDIATION PROGRAM, SEE LOCAL RULE 7.1 OR CONTACT THE CIVIL CALENDAR DEPARTMENT (SANTA CRUZ) AT (831) 454-2303 OR THE WATSONVILLE BRANCH AT (831) 763-8069.

You may also stipulate to use a private arbitration or mediation service with the same local form 1012. This local form is required to ensure that the case is tracked properly by Court staff.

---

SUPCV-1012 (Rev. 1/07)                                          Page 2 of 3
                                                        Local Rule 7.1.02

STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
OR PRIVATE ARBITRATION

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*NAME AND ADDRESS*):      TELEPHONE NO.: | *For Court Use Only* |
|---|---|
| ATTORNEY FOR (*NAME*): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**<br>☐ Santa Cruz                   ☐ Watsonville Branch<br>   701 Ocean Street, Room 110       1430 Freedom Boulevard<br>   Santa Cruz, CA 95060            Watsonville, CA 95076 | |
| Plaintiff/Petitioner:<br><br>Defendant/Respondent: | |
| STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION<br>OR PRIVATE ARBITRATION<br>Must be filed 10 days before Case Management Conference | CASE NO. |

FOR GOOD CAUSE as stated in the attached supporting declaration,
CASE MANAGEMENT CONFERENCE CURRENTLY SET FOR:  (DATE)_____
CHECK ONLY ONE BOX:

1. (    ) The parties stipulate to court ordered mediation.

2. (    ) The parties stipulate to private mediation or arbitration, to be arranged by the parties and completed within 120 days of the current CMC date stated above.  The parties agree that such process shall be a good faith attempt to resolve the case.

**SIGNATURES OF COUNSEL:**
_____      TYPE NAME: _____
DATE: _____      ATTORNEY FOR: _____
_____      TYPE NAME: _____
DATE: _____      ATTORNEY FOR: _____

☐ ADDITIONAL SIGNATURES IN ATTACHMENT "A"

**ORDER**

**BASED ON THE STIPULATION OF THE PARTIES, THE SUPPORTING DECLARATION,
AND FINDING GOOD CAUSE, THE APPLICATION IS HEREBY GRANTED**

☐ SET FOR JUDICIAL MEDIATION ON: _____   AT: _____ a.m./p.m.

☐ VACATE CMC CURRENTLY SET FOR: _____   AT: _____ a.m./p.m.

Date: _____      _____
                                   **JUDGE OF THE SUPERIOR COURT**

SUPCV-1012 (Rev. 1/07)                                         Page 3 of 3
                                                               Local Rule 7.1.02
**STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
OR PRIVATE ARBITRATION**

**EXHIBIT  B**

1    E. Scott Palmer, Esq., SBN 155376
     Email: spalmer@pldlawyers.com
2    Frederick A. Haist, Esq., SBN 211322
     Email: fhaist@pldlawyers.com
3    PALMER, LOMBARDI & DONOHUE LLP
     888 West 6th Street, 12th Floor
4    Los Angeles, California 90017
     Phone: (213) 688-0430
5    Fax: (213) 688-0440

6    Attorneys for Defendant HOMECOMINGS FINANCIAL, LLC

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SANTA CRUZ

10

11    CARLOS PACHECO, an individual,    )    Case No. CV 160271
                             )
12            Plaintiff,           )    **NOTICE OF FILING OF REMOVAL TO**
                             )    **FEDERAL COURT**
13         vs.                )
                             )
14    HOMECOMINGS FINANCIAL, LLC,    )
     a Delaware limited liability company;   )
15    MORTGAGEIT, INC., a New York    )    Complaint Filed: May 15, 2008
     corporation; and DOES 1-100, Inclusive,   )
16                               )
                    Defendants.        )
17                               )

18

19        TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20         PLEASE TAKE NOTICE that on June 18, 2008, Defendant HOMECOMINGS

21   FINANCIAL, LLC timely filed a Notice of Removal of this action in the United States District

22   Court for the Northern District of California (the "Notice"). A true and correct copy of the Notice

23   is attached hereto as Exhibit "1."

24         PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. section 1446, the filing of

25   the attached Notice of Removal with the Federal Court effects the removal of this action, and that

26   ///

27   ///

28   ///

1   this Court may proceed no further unless and until the case is remanded.

2

3   DATED:  June  18, 2008              PALMER, LOMBARDI & DONOHUE LLP

4

5

6   By _____

7      E. SCOTT PALMER
       FREDERICK A. HAIST

8      Attorneys for Defendant HOMECOMINGS
       FINANCIAL, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1

1  E. Scott Palmer, Esq., SBN 155376
   Email: spalmer@pldlawyers.com
2  Frederick A. Haist, Esq., SBN 211322
   Email: fhaist@pldlawyers.com
3  PALMER, LOMBARDI & DONOHUE LLP
   888 West 6th Street, 12th Floor
4  Los Angeles, California 90017
   Phone: (213) 688-0430
5  Fax: (213) 688-0440

6  Attorneys for Defendant HOMECOMINGS FINANCIAL, LLC

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11 CARLOS PACHECO, an individual,        )  Case No.
                                          )
12            Plaintiff,                   )
                                          )  **NOTICE OF REMOVAL OF**
13     vs.                                 )  **CIVIL ACTION BY**
                                          )  **DEFENDANT HOMECOMINGS**
14 HOMECOMINGS FINANCIAL, LLC,            )  **FINANCIAL, LLC PURSUANT**
   a Delaware limited liability company;  )  **TO 28 U.S.C. SECTION 1441**
15 MORTGAGEIT, INC., a New York           )
   corporation; and DOES 1-100, Inclusive,)  [FEDERAL QUESTION]
16                                         )
              Defendants.                  )  [Complaint Filed: May 15, 2008]
17                                         )
                                          )
18 _____

19         TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

20 DISTRICT OF CALIFORNIA:

21         PLEASE TAKE NOTICE that, pursuant to sections 1441 and 1331 of Title 28

22 of the United States Code, Defendant HOMECOMINGS FINANCIAL, LLC

23 ("Homecomings"), hereby removes the action entitled *Carlos Pacheco vs.*

24 *Homecomings Financial, LLC, et al.*, Superior Court of the State of California for

25 the County of Santa Cruz, case no. CV160271 (the "Action"), to the United States

26 District Court for the Northern District of California on the following grounds:

27         1.      On or about May 15, 2008, Plaintiff CARLOS PACHECO ("Plaintiff")

28 filed the Action in California state court.  Plaintiff served Homecomings on or about

                                    1

1   May 19, 2008. A true and correct copy of the Summons and Complaint in the
2   Action is attached hereto as Exhibit A. Based on the foregoing, Homecomings has
3   timely filed this Notice of Removal. *See* 28 U.S.C. section 1446.

4         2.     According to the Santa Cruz County Superior Court website, located on
5   the internet at http://www.santacruzcourt.org/, Defendant MortgageIT, Inc. was
6   served on May 29, 2008. Defendant MortgageIT Inc. has joined in this removal.
7   *See* Joinder In Notice Of Removal Of Action, attached as Exhibit C.

8         3.     The Action is a civil action of which this Court has original jurisdiction
9   under 28 U.S.C. section 1331 and is one which may be removed to this Court by
10  Homecomings pursuant to the provisions of 28 U.S.C. section 1441 in that the
11  Action involves a federal question that can be ascertained from the face of
12  Plaintiff's complaint. Plaintiff, in his complaint, alleges the following claim which
13  involves federal questions and laws: Rescission under the Truth in Lending Act, 15
14  U.S.C. §§1601 *et seq.* [Complaint ¶¶29-38, attached as Exhibit A.]

15        4.     Homecomings simultaneously is filing a copy of this Notice of
16  Removal with the Clerk of the Superior Court of the State of California, County of
17  Santa Cruz and it will be served on Plaintiff's counsel on June 18, 2008.
18  Homecomings will serve Plaintiff with copies of this Notice of Removal and the
19  notice filed in State Court. A true and correct copy of written notice sent to the
20  Clerk of the Superior Court and Plaintiff is attached hereto as Exhibit B.

21  DATED: June 18, 2008

22

23

24  By _____
25       H. SCOTT PALMER
     FREDERICK A. HAIST
26       PALMER, LOMBARDI & DONOHUE LLP
     Attorneys for Defendant HOMECOMINGS
27       FINANCIAL, LLC

28

2

Exhibit A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HOMECOMINGS FINANCIAL, LLC, a Delaware limited liability company;
MORTGAGEIT, INC., a New York corporation;; and DOES 1-100, Inclusive

**F I L E D**

**MAY 15 2008**

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CARLOS PACHECO

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

California Superior Court, County of Santa Cruz
701 Ocean Street
Santa Cruz, CA 95060

**CASE NUMBER:**
*(Número del Caso):*

160271

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel J. Mulligan [SBN 103129], Jenkins, Mulligan & Gabriel LLP
225 Bush Street, Sixteenth Floor, San Francisco, CA 94104 Tel: (405) 982-8500

DATE:    MAY 15 2008    Clerk, by _____ ALEX CALVO    DEBORAH ROJAS    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* HOMECOMINGS FINANCIAL, LLC

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☒ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* LLC
4. ☑ by personal delivery on *(date):* 05/19/2008

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

www.accesslaw.com

1  JENKINS MULLIGAN & GABRIEL LLP
   Daniel J. Mulligan [SBN 103129]
   225 Bush Street, Sixteenth Floor
2  San Francisco, California 94104
   Telephone: (415) 982-8500
3  Facsimile: (415) 982-8515

4  THE LAW OFFICE OF SIMMONS & PURDY
   Pamela D. Simmons [SBN 160523]
5  2424 Porter Street, Suite 10
   Soquel, California 95073-2454
6  Telephone: (831) 464-6884
   Facsimile: (831) 464-6886
7
   Attorneys for Plaintiff,
8  CARLOS PACHECO

9

10

11         SUPERIOR COURT OF THE STATE OF CALIFORNIA

12         IN AND FOR THE COUNTY OF SANTA CRUZ

13
   CARLOS PACHECO, an individual,        CASE NO.: CW  160271
14
                Plaintiff,                )
15                                        )
          v.                              )
16                                        )
   HOMECOMINGS FINANCIAL, LLC,            )   COMPLAINT FOR RESCISSION UNDER
17 a Delaware limited liability company;  )   FEDERAL TRUTH-IN-LENDING ACT
   MORTGAGEIT, INC., a New York           )
18 corporation; and DOES 1-100, Inclusive,)
                                          )
19              Defendants.               )
                                          )
20 ─────────────────────────────────────  )

21
          Plaintiff Carlos Pacheco hereby brings this Complaint for rescission, monetary damages,
22
   and declaratory relief pursuant to the Federal Truth in Lending Act, 15 U.S.C. section 1601 *et seq.*
23
   ("TILA") and Regulation Z (12 C.F.R. 226), against Defendants, and by this Complaint alleges as
24
   follows:
25
   ///
26

27                                      — 1 —

28 *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

1

2                           **I. INTRODUCTION**

3        1.      Defendant MortgageIT, Inc. ("MortgageIT") violated TILA and Regulation Z

4   in connection with a loan transaction with Plaintiff.  Defendant Homecomings Financial, LLC

5   ("Homecomings"), upon information and belief, now holds the promissory note at issue.

6   Plaintiff brings this Complaint pursuant to federal law for rescission or a determination that

7   Plaintiff has properly rescinded any security interest held on Plaintiff's Property (defined

8   below) held by Defendants and to recover statutory penalties and other damages as provided

9   by law.

10                      **II. JURISDICTION AND VENUE**

11       2.      Jurisdiction is proper in this county in that Plaintiff's claims arose in this

12  County, the property at issue is located in this County, and the deed of trust at issue was

13  recorded in this County. This Court has concurrent jurisdiction of the subject matter of this

14  Complaint.

15       3.      The amount in controversy exceeds the jurisdictional minimum of this Court.

16                            **III. PARTIES**

17       4.      Plaintiff Carlos Pacheco is a natural person who owns and resides at the real

18  property commonly described as 855 Soquel San Jose Road, Soquel, California (hereafter

19  "the Property").  The Property is Plaintiff's principal and family residence.

20       5.      Plaintiff is a "consumer," as defined in TILA and Regulation Z.

21       6.      Plaintiff is informed and believes, and on that basis alleges, that Defendant

22  Homecomings is a Delaware limited liability company that conducts consumer loan operations

23  in California, including the issuance of loans secured by deeds of trust.

24       7.      Plaintiff is further informed and believes, and on that basis alleges, that

25  Homecomings is a "creditor" with regard to the secured loan that is the subject of this action,

26  as defined in TILA and Regulation Z (12 C.F.R. 226.23).

27                                – 2 –

1

2          8.      Plaintiff is informed and believes, and on that basis alleges, that Defendant

3    MortgageIT is a New York corporation that conducts consumer loan operations in California,

4    including the issuance of loans secured by deeds of trust.

5          9.      Plaintiff is further informed and believes, and on that basis alleges, that

6    MortgageIT is a "creditor" with regard to the secured loan that is the subject of this action,

7    as defined in TILA and Regulation Z (12 C.F.R. 226.23).

8          10.     At all times relevant to the claims in this Complaint, Defendants' employees

9    or agents acted with the authority of their employers and/or principals.

10         11.     Plaintiff does not know the true names and capacities of the Defendants sued

11   herein as Does 1-100, inclusive, and therefore Plaintiff sues said Defendants by the foregoing

12   fictitious names.  When the true names and capacities of these Defendants become known,

13   Plaintiff will amend this Complaint to include such true names and capacities and, if necessary,

14   will seek leave to amend to add additional charging allegations against them.  Plaintiff is

15   informed and believes, and thereon alleges, that Does 1-100, inclusive, include persons who

16   conspired or aided and abetted the other Defendants.

17         12.     Plaintiff alleges that each Defendant, including those sued herein as Does 1-100,

18   was acting as an agent or representative of every other Defendant in doing all of the acts

19   described in this Complaint and at all times was acting within the course and scope of such

20   agency or representative capacity in doing the acts described herein.

21         13.     At all times herein mentioned, Defendants, and each of them, were agents or

22   joint venturers of each of the other Defendants and, in doing the acts alleged herein, were

23   acting within the course and scope of such agency.  Each Defendant had actual and/or

24   constructive knowledge of the acts of each of the other Defendants and ratified, approved

25   and/or retained the benefits of said wrongful acts.

26

27                                            – 3 –

28   *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

1

2                              IV. <u>FACTUAL ALLEGATIONS</u>

3        14.    Plaintiff owns the Property, which is Plaintiff's principal and family residence.

4        15.    Prior to entering into the loan transaction with Defendant MortgageIT, the

5   Property was subject to a mortgage with Countrywide Home Loans in the approximate amount

6   of $506,293.16.

7        16.    On November 7, 2005, Plaintiff flew to Southern California and drove to the

8   office of the Real Estate Loan Centers in Apple Valley, California, to sign loan documents to

9   secure a home loan from defendant MortgageIT in the amount of $607,200.00 (hereafter

10  "the Loan"). Later on the same day, Plaintiff flew back to Northern California.

11       17.    On November 7, 2005, at the offices of Real Estate Loan Centers, Plaintiff

12  signed several documents, including an Adjustable Rate Note in favor of Defendant

13  MortgageIT and a Deed of Trust securing Plaintiff's obligations under such Adjustable Rate

14  Note.

15       18.    A notary present during Plaintiff's signing notarized Plaintiff's signature on the

16  Deed of Trust and dated it as November 4, 2005, which was three days earlier than the actual

17  date that Plaintiff signed his loan documents. Plaintiff, who resides in Northern California,

18  was not present at the Real Estate Loan Centers office on November 4, 2005.

19       19.    While at the offices of Real Estate Loan Centers on November 7, 2005, Plaintiff

20  received a pre-copied set of Loan documents, all unsigned.

21       20.    Included in this set of the Loan documents were two Notice of Right To Cancel

22  forms with printed dates of October 24, 2005. One of the two forms is signed and has a

23  handwritten date of October 27, 2005. Neither of these forms indicates the last day on which

24  Plaintiff could exercise his right to rescind the Loan. True and correct copies of the Notice of

25  Right to Cancel forms that Plaintiff received are attached hereto as <u>Exhibit A</u>.

26       21.    The Loan funded on November 9, 2005, two days after Plaintiff signed his Loan

27                                        – 4 –

28  *Pacheco v. Homecomings Financial, LLC, et al.*                        Complaint

1    documents and one day prior to the date on which Plaintiff's actual right to rescind the Loan

2    pursuant to TILA and Regulation Z expired.

3        22.    The Deed of Trust securing the Loan was recorded against the Property on

4    November 10, 2005, as Document No. 2005-0079205 in the Official Records of Santa Cruz

5    County. Funds from the Loan were used to pay in full the Countrywide loan that previously

6    encumbered the Property.

7        23.    To obtain the Loan, Plaintiff paid transaction fees and broker fees totaling

8    approximately $5,479.57, not including a "loan discount" fee of $15,180.00 paid to Real Estate

9    Loan Centers outside of closing.

10       24.    Plaintiff is informed and believes, and on that basis alleges, that, after the

11    recordation of the Deed of Trust securing the Loan, MortgageIT's interest in the Loan was

12    assigned to Defendant Homecomings.

13       25.    Pursuant to TILA, an assignee of a creditor's interest is liable for rescission to

14    the same extent as the assignor (15 USC section 1641(c): "[a]ny consumer who has the right to

15    rescind a transaction under section 1635 of this title may rescind the transaction as against any

16    assignee of the obligation.").

17       26.    On April 20, 2007, Plaintiff gave Defendant MortgageIT a valid notice of

18    rescission of the Loan, a true and correct copy of which is attached hereto as Exhibit B.

19    Defendant MortgageIT failed and refused to accept Plaintiff's valid notice of rescission or

20    take the required necessary actions thereafter.

21       27.    On April 23, 2007, Plaintiff gave Defendant Homecomings a valid notice of

22    rescission of the Loan, a true and correct copy of which is attached hereto as Exhibit C.

23    Defendant Homecomings failed and refused to accept Plaintiff's valid notice of rescission or

24    take the required necessary actions thereafter.

25

26

27                                            – 5 –

28    *Pacheco v. Homecomings Financial, LLC, et al.*                              Complaint

1

2                                 **V. CAUSE OF ACTION**

3              Violation of Regulation Z, 15 U.S.C. §§ 1601 et. seq.; 12 C.F.R.226
                                   (Against All Defendants)
4

5        28.    Plaintiff realleges and incorporates by reference each and every previous

6   paragraph of this Complaint as though set forth in full.

7        29.    This consumer credit transaction was subject to the Plaintiff's right of rescission

8   under TILA, as described in 15 U.S.C. section 1635, and Regulation Z section 226.23 (12

9   C.F.R. § 226.23).

10       30.    In the course of this consumer credit transaction, Defendants violated 15 U.S.C.

11  section 1635(a) and Regulation Z section 226.23(b) by failing to deliver to Plaintiff two copies

12  of the notice of the right to cancel that clearly and conspicuously disclosed the date of the

13  transaction and the date the rescission period expired.  The notices of right to cancel that

14  Plaintiff received were falsely dated and did not indicate the final date to rescind the Loan.

15       31.    Borrowers retain a continuing right to rescind a loan transaction until the third

16  business day after receipt of both the notice of the right to rescind as described herein and the

17  notice of all "material" disclosures as described herein, pursuant to 15 U.S.C. § 1635(a) and

18  Regulation Z § 226.23(a)(3).  Plaintiff has never received proper notices and, thus, retains the

19  right to rescind.

20       32.    Plaintiff's April 20, 2007, and April 23, 2007, notices of rescission with respect

21  to the Loan were valid and timely notices of rescission under applicable law.

22       33.    Defendants failed to accept Plaintiff's valid notices of rescission in violation of

23  15 U.S.C. section 1635, and Regulation Z section 226.23.

24       34.    Defendants failed to accept Plaintiff's notices of rescission within the statutorily

25  prescribed time period, as set forth in 15 U.S.C. section 1636 and Regulation Z section 226.23.

26       35.    Defendants failed to take any action necessary or appropriate to reflect the

27                                     – 6 –

28  *Pacheco v. Homecomings Financial, LLC, et al.*                        Complaint

1   termination of any security interest created in connection with the Loan, including the security

2   interest described herein, as required by 15 U.S.C. section 1635(b) and Regulation Z section

3   226.23(d)(2).

4        36.    Defendants failed to return to Plaintiff any money or property given by Plaintiff

5   to anyone, including to Defendants, as required by 15 U.S.C. section 1635(b) and Regulation Z

6   section 226.23(d)(2).

7        37.    As a result of the violations by Defendants under TILA and Regulation Z, as

8   described herein, Plaintiff is entitled to rescind the Loan transaction.

9        38.    As a result of the violations by Defendants under TILA and Regulation Z, as

10  described herein, Plaintiff is entitled to terminate any security interest in the property created

11  under the loan transactions with Defendants, under 15 U.S.C. section 1635 and Regulation Z

12  section 226.23. As a result of the violations by Defendants under TILA and Regulation Z, as

13  described herein, Plaintiff is entitled to the return of any money or property given by Plaintiff

14  to anyone, including to Defendants, in connection with the Loan transaction with Defendants,

15  under 15 U.S.C. section 1635 and Regulation Z section 226.23.

16       39.    As a result of the violations by Defendants under TILA and Regulation Z, as

17  described herein, Plaintiff is entitled to retain proceeds to vest in Plaintiff, under 15 U.S.C.

18  section 1635 and Regulation Z section 226.23.

19                          **PRAYER FOR RELIEF**

20       WHEREFORE, Plaintiff respectfully requests that this Court to:

21       1.    Issue a permanent injunction enjoining and restraining Defendants, their

22  partners, agents, trustees, servants, assigns, officers, employees, attorneys, representatives, and

23  any and all others acting at their direction, on their behalf, in concert with them, or participating

24  with them, from foreclosing on the property, engaging in, or performing, directly or indirectly,

25  any and all acts in violation of TILA and Regulation Z, and from committing all unlawful

26  practices complained of herein;

27                                – 7 –

28  *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

1

2          2.      Award Plaintiff actual, compensatory, statutory and punitive damages in an

3    amount to be determined at trial;

4          3.      Issue a declaratory judgment that the Defendants' actions have violated federal

5    truth-in-lending laws and, as a result the security interest and note are void;

6          4.      Award Plaintiff the costs of suit and reasonable attorney's fees; and

7          5.      Grant such other and further relief as the Court deems just and proper.

8

9    Date: April 17, 2008.                    JENKINS MULLIGAN & GABRIEL LLP

10                                            &

11                                            LAW OFFICE OF SIMMONS & PURDY

12

13                                    By: _____

14                                            William J. Purdy, III
                                              Attorneys for Plaintiff
15                                            CARLOS PACHECO

16

17

18

19

20

21

22

23

24

25

26

27                              – 8 –

1

## JURY TRIAL DEMAND

2          Plaintiff Carlos Pacheco requests a trial by jury on all claims so triable.

3     Dated: April 17, 2008.                    JENKINS MULLIGAN & GABRIEL LLP

4                                                          &

5
                                               LAW OFFICE OF SIMMONS & PURDY
6

7                                               By

8                                                    William J. Purdy, III
                                                     Attorneys for Plaintiff
9                                                    CARLOS PACHECO

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        – 9 –

28    *Pacheco v. Homecomings Financial, LLC, et al.*                    Complaint

**EXHIBIT A**

Loan Name: CARLOS PACHECO                    LOAN NO.: 40443787

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

EXHIBIT "A"
LEGAL DESCRIPTION OF PROPERTY

Real property in the unincorporated area of the County of Santa Cruz, State of California, described as follows:

PARCEL ONE:

BEGINNING AT A STATION IN THE CENTERLINE OF THE SOQUEL-SAN JOSE ROAD DISTANT THEREON SOUTH 13 DEGREES 30' WEST 108 FEET FROM THE MOST NORTHERN CORNER OF PARCEL TWO OF THE LANDS CONVEYED BY LOUIS J. KLINDT, ET UX., TO VESTA MARGARET DALTON, BY DEED DATED SEPTEMBER 15, 1943, RECORDED NOVEMBER 1, 1943 IN VOLUME 455, PAGE 245, OFFICIAL RECORDS OF SANTA CRUZ COUNTY; RUNNING THENCE SOUTH 76 DEGREES 30' EAST 91.67 FEET TO A STATION; THENCE SOUTH 13 DEGREES 30' WEST 0.80 FEET TO A STATION; THENCE SOUTH 10 DEGREES WEST 49.20 FEET TO A STATION; THENCE NORTH 76 DEGREES 30' WEST 91.67 FEET TO A STATION IN THE CENTERLINE OF THE SOQUEL-SAN JOSE ROAD; THENCE NORTHEASTERLY ALONG THE CENTERLINE OF SAID ROAD 50 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION CONTAINED IN THE DEED FROM BERT T. BURCH, ET UX., TO FRANCES BURCH, RECORDED MARCH 11,1958 IN VOLUME 1175, PAGE 226, OFFICIAL RECORDS OF SANTA CRUZ COUNTY.

PARCEL TWO:

A RIGHT OF WAY FOR A PIPE LINE AND THE RIGHT TO ENTER UPON THE LANDS OF FRANCES J. LOVELY, FORMERLY FRANCES BURCH FOR THE PURPOSES OF LAYING, MAINTAINING, REPAIRING OR RENEWING SAID PIPE LINE AND SERVICING, REPAIRING OR OTHERWISE MAINTAINING AND REPAIRING, PUMPING PLANT, AS GRANTED IN THAT CERTAIN MEMORANDUM OF AGREEMENT RECORDED MARCH 11, 1958 IN BOOK 1175, PAGE 223, OFFICIAL RECORDS.

APN: 104-211-17

LENDER SUPPORT SYSTEMS INC. EX-A_FRM (05/06)

**EXHIBIT B**

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:                           Loan Number: 40443787

Borrower: CARLOS PACHECO

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

---

YOUR RIGHT TO CANCEL:

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is    OCTOBER 24, 2005                    ; or
2. the date you receive your Truth in Lending disclosures;  or   OCTOBER 24, 2005
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor: MORTGAGEIT, INC.

at          8880 RIO SAN DIEGO DR #250
            SAN DIEGO, CA 92108-

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
Date                                      Borrower's Signature

---

### ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: 10/27/05          CARLOS PACHECO
                        _____
                        Borrower's Name

                        _Carlos Pacheco_ (signature)
                        _____
                        CARLOS PACHECO

                                        _____
                                        Borrower's Signature

LENDER SUPPORT SYSTEMS INC. GEN-020.GEN (07/00)

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:                                Loan Number: 4044~~~

Borrower: CARLOS PACHECO

Property Address: 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

---

**YOUR RIGHT TO CANCEL:**

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.  the date of the transaction, which is      OCTOBER 24, 2005                     ; or
2.  the date you receive your Truth in Lending disclosures;  or  OCTOBER 24, 2005
3.  the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:   MORTGAGEIT, INC.

at          8866 RIO SAN DIEGO DR #250
            SAN DIEGO, CA 92108-

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
Date                          Borrower's Signature

---

### ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: _____          _____
                           CARLOS PACHECO
                           Borrower's Name

                           _____
                           CARLOS PACHECO

                                    Borrower's Signature

LENDER SUPPORT SYSTEMS INC. 1084-001-SDI (07/05)

**EXHIBIT C**

Recording Requested By:
MORTGAGEIT

Return To:
MORTGAGEIT

1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562

Prepared By:

------------------------[Space Above This Line For Recording Data]------------------------

# DEED OF TRUST

LOAN NO.:   40443787                                    MIN   1001123657882523
ESCROW NO.:   05-1039-NL                                MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated            NOVEMBER 04, 2005
together with all Riders to this document.
(B) "Borrower" is
CARLOS PACHECO, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY


Borrower's address is 855 SOQUEL SAN JOSE ROAD, SOQUEL, CA  95073
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
MORTGAGEIT, INC.

Lender is a  CORPORATION
organized and existing under the laws of  NEW YORK

---

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005   1/01
VMP-6A(CA) (0207)
                              Page 1 of 15         LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/04)

Lender's address is
23 MAIDEN LANE 6TH FLOOR, NEW YORK, NY 10038-

(D) "Trustee" is
FIRST AMERICAN TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated     NOVEMBER 04, 2005
The Note states that Borrower owes Lender

SIX HUNDRED SEVEN THOUSAND TWO HUNDRED AND NO/100 X X X X X X X X X X X X X X X X X X
                                                                                      Dollars
(U.S. $ 607,200.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than     DECEMBER 01, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following
riders are to be executed by Borrower [check box as applicable]:

| [XX] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of                    SANTA CRUZ                    :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 104-211-17                                which currently has the address of
                        855 SOQUEL SAN JOSE ROAD                                          [Street]
            SOQUEL                            [City], California        95073        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

VMP-6A(CA) (0207)                        Page 3 of 15                        Initials:_____
                                                                          Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials:_____

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials:_____

VMP-6A(CA) (0207)                    Page 11 of 15                    Form 3005  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                        -Witness

_____
                        -Witness


_____(Seal)        _____(Seal)
CARLOS PACHECO        -Borrower                         -Borrower

_____(Seal)        _____(Seal)
                      -Borrower                         -Borrower

_____(Seal)        _____(Seal)
                      -Borrower                         -Borrower

_____(Seal)        _____(Seal)
                      -Borrower                         -Borrower


VMP-6A(CA) (0207)              Page 14 of 15              Form 3005  1/01

State of  CALIFORNIA
County of                                          } ss.

On                              before me,
                                                        personally appeared

CARLOS PACHECO


                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.


_____ (Seal)

**EXHIBIT D**

Law Office Of
# Simmons & Purdy

mela D. Simmons
a J. Purdy, III

Phone: 831.464.688
Fax: 831.464.688
pamela@pamelaw.co
bill@pamelaw.co

April 20, 2007

Mortgageit, Inc.
8880 Rio San Diego Drive
Suite 250
San Diego, CA 92108
**SENT VIA CALIFORNIA OVERNIGHT**

    Re:    *Carlos Pacheco*
           *Loan #40443787 dated October 24, 2005 for $607,200.00*
           *Rescission of Mortgage Loan*
           *Pursuant to Federal Truth in Lending Act*

Dear Mortgageit, Inc.:

    I represent Mr. Pacheco in this matter as it relates to a loan made by
Mortgageit, Inc. which is secured by Mr. Pacheco's home. Please be informed
that for the reasons set forth below, Mr. Pacheco hereby rescinds his loan
pursuant to the Federal Truth in Lending Act. In addition to the claims listed
below, there may be additional violations of the Federal Truth in Lending Act
(hereinafter "TILA") and state lending laws of which we are not yet aware.

    On or about October 24, 2006, Mr. Pacheco actually flew from his home
in Soquel, California to Southern California at his own expense. He had been
promised a "great deal" on a loan and that it would be worth it to his family to
make this trip. When Mr. Pacheco arrived at the Ontario airport, he was
picked up by his cousin. From there he was driven to Apple Valley, California
to sign his loan documents.

    In the offices of the Real Estate Loan Center, Mr. Pacheco signed the loan
documents. When he left, he was given a copy of the loan documents that he
had executed. These copies had been "pre-copied". Included with the copies of
the loan documents were two (2) Notice of Right to Cancel forms given to Mr.
Pacheco pursuant to TILA. I am enclosing copies of each of the Right to Cancels
received by Mr. Pacheco for your review.

Mortgageit, Inc.
April 20, 2007
Page 3


The Federal Truth in Lending Act, 15 U.S.C., Sec. 1635, as implemented under Regulation Z requires that each borrower receive two (2) copies of a properly filled out Right to Cancel. Mr. Pacheco should have received two (2) correctly filled out copies of the statutorily required form. However, a review of his file demonstrates that he received two defective copies. The copies do not indicate the final date to cancel. Mr. Pacheco hereby informs you that he is rescinding his loan due to the failure of Mortgageit, Inc. to provide him with two copies each, properly filled out, of his Notice of Right to Cancel, as required under 15 U.S.C., Sec. 1635, and Reg. Z.

As a result of this rescission notice Mortgageit, Inc. has twenty (20) days from its receipt of this notice to return to my client all monies paid in connection with the terms of the mortgage loan which is the subject of this letter. My client hereby requests an itemization of such monies. We further make a claim for civil penalties to the extent allowed by law. Upon your discharge of Mortgageit, Inc.'s statutory duties, my client will perform all necessary actions required by 15 U.S.C. Sec. 1635(b); Reg. Z, Secs. 226.15(d)(3), 226.23(d)(3).

Failure to return to my client all monies due may further subject Mortgageit, Inc. to additional actual and statutory damages. Additionally, please note that the statute gives the borrower the right to recover attorney fees and costs should they be forced to obtain relief from the courts due to Mortgageit, Inc.'s failure to comply with the statute.

Sincerely,

Pamela D. Simmons
Attorney at Law

PDS:cri
/enclosures
cc: client

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:                                Loan Number: 45443797

Borrower: CARLOS PACHECO

Property Address: 555 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

---

YOUR RIGHT TO CANCEL:

You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occur last:

1. the date of the transaction, which is    OCTOBER 24, 2005
2. the date you receive your Truth in Lending disclosures; or   OCTOBER 24, 2005           ; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:   MORTGAGEIT, INC.

at
          8820 RIO SAN DIEGO DR #250
          SAN DIEGO, CA  92108-

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____                    _____
        Date                                       Borrower's Signature

---

### ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: _10/27/05_          CARLOS PACHECO
                          Borrower's Name

                          _Carlos Pacheco_
                          CARLOS PACHECO
                                                      Borrower's Signature

LENDER SUPPORT SYSTEMS INC. LRB-020.CCH (07/04)

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 40443787

Borrower: CARLOS PACHECO

Property Address: 555 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

**YOUR RIGHT TO CANCEL:**
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.  the date of the transaction, which is      OCTOBER 24, 2005
2.  the date you receive your Truth in Lending disclosures;  or  OCTOBER 24, 2005                ; or
3.  the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL:**

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:  MORTGAGEIT, INC.

at
            8880 RIO SAN DIEGO DR #250
            SAN DIEGO, CA 92108-
You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of
_____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____          _____
        Date                              Borrower's Signature

## ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: _____          _____
                                   CARLOS PACHECO
                                   Borrower's Name

                               _____
                                   CARLOS PACHECO
                                              Borrower's Signature

**EXHIBIT E**

Law Office Of
# Simmons & Purdy

Phone: 831.464.688·
Fax: 831.464.688·
pamela@pamelaw.con
bill@pamelaw.con

mela D. Simmons
J. Purdy, III

April 23, 2007

Homecomings Financial
P.O. Box 890036
Dallas, TX 75389-0036
**Sent Via U.S. Certified Mail**

Re:    *Carlos Pacheco*
       *Loan #40443787 dated October 24, 2005 for $607,200.00*
       *Rescission of Mortgage Loan*
       *Pursuant to Federal Truth in Lending Act*

Dear Homecomings Financial:

As the assignee on this loan, I am sending this demand to you. I represent Mr. Pacheco in this matter as it relates to a loan made by Mortgageit, Inc. which is secured by Mr. Pacheco's home. Please be informed that for the reasons set forth below, Mr. Pacheco hereby rescinds his loan pursuant to the Federal Truth in Lending Act. In addition to the claims listed below, there may be additional violations of the Federal Truth in Lending Act (hereinafter "TILA") and state lending laws of which we are not yet aware.

On or about October 24, 2006, Mr. Pacheco actually flew from his home in Soquel, California to Southern California at his own expense. He had been promised a "great deal" on a loan and that it would be worth it to his family to make this trip. When Mr. Pacheco arrived at the Ontario airport, he was picked up by his cousin. From there he was driven to Apple Valley, California to sign his loan documents.

In the offices of the Real Estate Loan Center, Mr. Pacheco signed the loan documents. When he left, he was given a copy of the loan documents that he had executed. These copies had been "pre-copied". Included with the copies of the loan documents were two (2) Notice of Right to Cancel forms given to Mr. Pacheco pursuant to TILA. I am enclosing copies of each of the Right to Cancels received by Mr. Pacheco.

Homecomings Financial
April 23, 2007
Page 2


  The Federal Truth in Lending Act, 15 U.S.C., Sec. 1635, as implemented
under Regulation Z requires that each borrower receive two (2) copies of a
properly filled out Right to Cancel. Mr. Pacheco should have received two (2)
correctly filled out copies of the statutorily required form. However, a review of
his file demonstrates that he received two defective copies. The copies do not
indicate the final date to cancel. Mr. Pacheco hereby informs that he is
rescinding his loan due to the failure of Mortgageit, Inc. to provide him with
two copies each, properly filled out, of his Notice of Right to Cancel, as required
under 15 U.S.C., Sec. 1635, and Reg. Z.

  As a result of this rescission notice Mortgageit, Inc. has twenty (20) days
from its receipt of this notice to return to my client all monies paid in
connection with the terms of the mortgage loan which is the subject of this
letter.  My client hereby requested an itemization of such monies. We further
made a claim for civil penalties to the extent allowed by law.  Upon discharge of
Mortgageit, Inc.'s  statutory duties, my client  will perform all necessary actions
required by 15 U.S.C. Sec. 1635(b); Reg. Z, Secs. 226.15(d)(3), 226.23(d)(3).

  Failure to return to my client all monies due may further subject
Mortgageit, Inc. to additional actual and statutory damages. Additionally,
please note that the statute gives the borrower the right to recover attorney fees
and costs should they be forced to obtain relief from the courts due to
Mortgageit, Inc.'s failure to comply with the statute.


    Sincerely,


    Pamela D. Simmons
    Attorney at Law


PDS:crl
/enclosures
cc: client

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 40443757

Borrower: CARLOS PACHECO

Property Address: 555 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

YOUR RIGHT TO CANCEL:
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1. the date of the transaction, which is · OCTOBER 24, 2005
2. the date you receive your Truth in Lending disclosures; or  OCTOBER 24, 2005              ; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:   MORTGAGEIT, INC.

at
        8880 RIO SAN DIEGO DR #250
        SAN DIEGO, CA  92108·
You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

                                        I WISH TO CANCEL

_____        _____
        Date                                Borrower's Signature

## ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE  10/27-/05          CARLOS PACHECO
_____          _____
                         Borrower's Name

                         _____
                         CARLOS PACHECO

                                        Borrower's Signature

LOADER SUPPORT SYSTEMS INC.  GLN-020.GLN (07/05)

## NOTICE OF RIGHT TO CANCEL

Transaction I.D. No.:

Loan Number: 40442787

Borrower: CARLOS PACHECO

Property Address: 355 SOQUEL SAN JOSE ROAD, SOQUEL, CA 95073

YOUR RIGHT TO CANCEL:
You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home.
You have a legal right under federal law to cancel this transaction, without cost, within three business
days from whichever of the following events occurs last:

1. the date of the transaction, which is    OCTOBER 24, 2005
2. the date you receive your Truth in Lending disclosures; or  OCTOBER 24, 2005                      ; or
3. the date you receive this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or security interest is also cancelled. Within 20 calendar
days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage,
lien, or security interest on/in your home has been cancelled, and we must return to you any money or
property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above,
but you must then offer to return the money or property. If it is impractical or unfair for you to return the
property, you must offer its reasonable value. You may offer to return the property at your home or at
the location of the property. Money must be returned to the address below. If we do not take possession
of the money or property within 20 calendar days of your offer, you may keep it without further
obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing.

Name of Creditor:    MORTGAGEIT, INC.

at
        8880 RIO SAN DIEGO DR #250
        SAN DIEGO, CA 92108-
You may use any written statement that is signed and dated by you and states your intention to cancel, or
you may use this notice by dating and signing below. Keep one copy of this notice because it contains
important information about your rights.

If you cancel by mail or telegram, you must send a notice no later than midnight of
_____ (or midnight of the third business day following the latest of the
three events listed above). If you send or deliver your written notice to cancel some other way, it must be
delivered to the above address no later than that time.

                              I WISH TO CANCEL

_____          _____
     Date                                            Borrower's Signature

---

### ACKNOWLEDGEMENT OF RECEIPT

BY SIGNING BELOW, I, THE UNDERSIGNED, HEREBY ACKNOWLEDGE THAT ON THE DATE LISTED
ABOVE I RECEIVED TWO (2) COMPLETED COPIES OF THIS NOTICE OF RIGHT TO CANCEL, IN THE
FORM PRESCRIBED BY LAW ADVISING ME OF MY RIGHT TO CANCEL THIS TRANSACTION.

DATE: _____          _____
                        CARLOS PACHECO
                        Borrower's Name

                        _____
                        CARLOS PACHECO

                        Borrower's Signature

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**

| | |
|---|---|
| Santa Cruz Branch | Watsonville Branch |
| 701 Ocean Street, Room 110 | 1Second Street, Room 300 |
| Santa Cruz, CA 95060 | Watsonville, CA 95076 |

*For Court Use Only*

FILED

MAY 15 2008

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

PLAINTIFF:   CARLOS PACHECO

DEFENDANT:   HOMECOMINGS FINANCIAL LLC

CASE MANAGEMENT INFORMATION AND SETTING

CASE NO:
CISCV160271

This case is in Santa Cruz County's Case Management Program. It is the Duty of each party to be familiar with the california rules of court and the date, time and place of the first case management conference.

This notice must be served with the summons on all defendants and cross-defendants. Notice of any other pending case management conference must be served on subsequently named defendants and corss-defendants.

**ATTENTION <u>DEFENDANT</u>:** YOU HAVE 30 DAYS AFTER THE SUMMONS IS SERVED ON YOU TO FILE A RESPONSE TO THE COMPLAINT. THE DATE BELOW <u>DOES</u> <u>NOT</u> EXTEND THE TIME TO FILE A RESPONSE. SEE THE SUMMONS FOR INSTRUCTIONS FOR RESPONDING TO THE SUMMONS AND COMPLAINT.

The first Case Management Conference hearing date is:

Date: 09/12/08          Time: 8:29          Department No.:   4

Address of the Court: ☑ 701 Ocean Street, Santa Cruz, California          ☐ 1 Second Street, Watsonville, California

*Telephonic court appearances are provided through CourtCall to the court. To make arrangments to appear at the Case Management Conference by telephone, please call the program administrator for CourtCall at (310) 572-4670 or (888) 882-6878 at least five (5) court days prior to the hearing. DO NOT CALL THE COURT.*

# THE LAWYER'S PLEDGE

In order to raise the standards of civility and professionalism among counsel and between the Bench and the Bar, I hereby pledge the following:

1.  To at all times comply with the California Rules of Professional Conduct;
2.  To honor all commitments;
3.  To be candid in all dealings with the court and counsel;
4.  To uphold the integrity of our system of justice and not compromise personal integrity for the sake of a client, case or cause;
5.  To seek to accomplish the client's legitimate goals by the most efficient and economical methods possible;
6.  To act in a professional manner at all times, to be guided by a fundamental sense of fair play in all dealings with counsel and the court, and to be courteous and respectful to the court;
7.  To be on time;
8.  To be prepared for all court appearances - to be familiar with all applicable court rules;
9.  To adhere to the time deadlines set by statute, rule, or order;
10. To avoid visual displays of pique in response to rulings by the court;
11. To discourage and decline to participate in litigation or tactics that are without merit or are designed primarily to harass or drain the financial resources of the opposing party;
12. To avoid any communications with the judge concerning a pending case unless the opposing party or lawyer is present, or unless permitted by court rules or otherwise authorized by law;
13. To refrain from impugning the integrity of the judicial system, its proceedings, or its members;
14. To treat all court personnel with the utmost civility and professonalism;
15. To remember that conflicts with opposing counsel are professional and not personal - vigorous advocacy is not inconsistent with professional courtesy;
16. To refrain from derogatory statements or discriminatory conduct on the basis of race, religion, gender, sexual orientation or other personal characteristic;
17. To treat adverse witnesses and litigants with fairness and due consideration;
18. To conduct discovery proceedings as if a judicial officer were present;
19. To meet and confer with opposing counsel in a genuine attempt to resolve procedural and discovery matters;
20. To not use discovery to harass the opposition or for any other improper purpose;
21. To not arbitrarily or unreasonably withhold consent to a just and reasonable request for cooperation or accommodation;
22. To not attribute to an opponent a position not clearly taken by that opponent;
23. To avoid unnecessary "confirming" letters and to be scrupulously accurate when making any written confirmation of conversations or events;
24. To not propose any stipulation in the presence of the trier of fact unless previously agreed to by the opponent;
25. To not interrupt the opponent's legal argument;
26. To address opposing counsel, when in court, only through the court;
27. To not seek sanctions against or disqualification of another lawyer to attain a tactical advantage or for any other improper purpose;
28. To not schedule the service of papers to deliberately inconvenience opposing counsel;
29. To refrain, except in extraordinary circumstances, from using the fax machine to demand immediate responses for opposing counsel.

# ADR INFORMATION PACKAGE

Included in this package:

- Cover Page

- Alternative Dispute Resolution Program Notice

- Local Form SUPCV 1012
  (Stipulation and Order to Attend Judicial Mediation or Private Arbitration)

## ATTENTION PLAINTIFFS/CROSS-COMPLAINANTS

### PLAINTIFFS SHALL SERVE A COPY OF THIS ADR INFORMATION PACKAGE ON EACH DEFENDANT ALONG WITH THE COMPLAINT. CROSS-COMPLAINANTS SHALL SERVE A COPY OF THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES TO THE ACTION ALONG WITH THE CROSS-COMPLAINT (CRC 3.221)

# ALTERNATIVE DISPUTE RESOLUTION PROGRAM NOTICE
# SANTA CRUZ SUPERIOR COURT
# LOCAL RULE 7.1.02(a)

TO:    ALL CIVIL LITIGANTS

RE:    JUDICIAL MEDIATION PROGRAM OF SANTA CRUZ OR OPTION FOR
       PRIVATE ARBITRATION

Alternate Dispute Resolution (ADR) is a process, other than formal litigation, in which a neutral person assists the parties in resolving their dispute. Santa Cruz County's ADR process is Judicial Mediation. If the parties agree to Mediation, it is the policy of this Court to assign appropriate cases to mediation without making a determination of the value of the case.

Appropriate cases will be assigned to Judicial Mediation from the Case Management Conference Calendar. The parties may stipulate to Mediation prior to the Case Management Conference by written stipulation on local form SUPCV 1012. Case Management Conference Statements and requests for continuances should be submitted at least ten days in advance of the hearing.

FOR MORE INFORMATION REGARDING SANTA CRUZ COUNTY'S MEDIATION PROGRAM, SEE LOCAL RULE 7.1 OR CONTACT THE CIVIL CALENDAR DEPARTMENT (SANTA CRUZ) AT (831) 454-2303 OR THE WATSONVILLE BRANCH AT (831) 763-8069.

You may also stipulate to use a private arbitration or mediation service with the same local form 1012. This local form is required to ensure that the case is tracked properly by Court staff.

STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
OR PRIVATE ARBITRATION

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(NAME AND ADDRESS)*: | TELEPHONE NO.: | *For Court Use Only* |
|---|---|---|
| ATTORNEY FOR *(NAME)*: | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ**

☐ Santa Cruz      ☐ Watsonville Branch
    701 Ocean Street, Room 110     1430 Freedom Boulevard
    Santa Cruz, CA 95060     Watsonville, CA 95076

Plaintiff/Petitioner:

Defendant/Respondent:

| STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION OR PRIVATE ARBITRATION<br>Must be filed 10 days before Case Management Conference | CASE NO. |
|---|---|

FOR GOOD CAUSE as stated in the attached supporting declaration,
CASE MANAGEMENT CONFERENCE CURRENTLY SET FOR: (DATE)_____
CHECK ONLY ONE BOX:

1. (   ) The parties stipulate to court ordered mediation.

2. (   ) The parties stipulate to private mediation or arbitration, to be arranged by the parties and completed within 120 days of the current CMC date stated above. The parties agree that such process shall be a good faith attempt to resolve the case.

**SIGNATURES OF COUNSEL:**

_____    TYPE NAME: _____
DATE: _____    ATTORNEY FOR: _____
_____    TYPE NAME: _____
DATE: _____    ATTORNEY FOR: _____

☐ ADDITIONAL SIGNATURES IN ATTACHMENT "A"

## ORDER

**BASED ON THE STIPULATION OF THE PARTIES, THE SUPPORTING DECLARATION, AND FINDING GOOD CAUSE, THE APPLICATION IS HEREBY GRANTED**

☐ SET FOR JUDICIAL MEDIATION ON: _____ AT: _____ a.m./p.m.

☐ VACATE CMC CURRENTLY SET FOR: _____ AT: _____ a.m./p.m.

Date: _____    _____
                                     **JUDGE OF THE SUPERIOR COURT**

SUPCV-1012 (Rev. 1/07)

STIPULATION AND ORDER TO ATTEND JUDICIAL MEDIATION
OR PRIVATE ARBITRATION

Exhibit B

1 | E. Scott Palmer, Esq., SBN 155376
Email: spalmer@pldlawyers.com
2 | Frederick A. Haist, Esq., SBN 211322
Email: fhaist@pldlawyers.com
3 | PALMER, LOMBARDI & DONOHUE LLP
888 West 6th Street, 12th Floor
4 | Los Angeles, California 90017
Phone: (213) 688-0430
5 | Fax: (213) 688-0440

6 | Attorneys for Defendant HOMECOMINGS FINANCIAL, LLC

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF SANTA CRUZ

10

11 | CARLOS PACHECO, an individual,                )    Case No.  CV 160271
                                                  )
12 |             Plaintiff,                        )    **NOTICE OF FILING OF REMOVAL TO**
                                                  )    **FEDERAL COURT**
13 |       vs.                                     )
                                                  )
14 | HOMECOMINGS FINANCIAL, LLC,                   )
a Delaware limited liability company;            )
15 | MORTGAGEIT, INC., a New York                  )    Complaint Filed:  May 15, 2008
corporation; and DOES 1-100, Inclusive,          )
16 |                                               )
                                                  )
17 |             Defendants.                       )
                                                  )

18

19 |       TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20 |       PLEASE TAKE NOTICE that on June 18, 2008, Defendant HOMECOMINGS

21 | FINANCIAL, LLC timely filed a Notice of Removal of this action in the United States District

22 | Court for the Northern District of California (the "Notice").  A true and correct copy of the Notice

23 | is attached hereto as Exhibit "1."

24 |       PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. section 1446, the filing of

25 | the attached Notice of Removal with the Federal Court effects the removal of this action, and that

26 | ///

27 | ///

28 | ///

1
NOTICE OF FILING OF REMOVAL TO FEDERAL COURT

1  this Court may proceed no further unless and until the case is remanded.

2

3  DATED: June _18_, 2008            PALMER, LOMBARDI & DONOHUE LLP

4

5

6                                   By _____

7                                      E. SCOTT PALMER
                                       FREDERICK A. HAIST
8                                      Attorneys for Defendant HOMECOMINGS
                                       FINANCIAL, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit C

1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11   CARLOS PACHECO, an individual,    )    Case No.

12            Plaintiff,                )
                                        )    **JOINDER IN NOTICE OF**
13        vs.                           )    **REMOVAL OF ACTION**
                                        )
14   HOMECOMINGS FINANCIAL,             )
     LLC, a Delaware limited liability  )
15   company; MORTGAGEIT, INC., a       )
     New York corporation; and DOES 1- )
16   100, Inclusive,                    )
                                        )
17            Defendants.               )
                                        )
18                                      )
                                        )
19   _____)

20        Defendant MORTGAGEIT, INC. hereby joins in Defendant

21   HOMECOMINGS FINANCIAL, LLC's Notice of Removal to the United States

22   District Court for the Northern District of California of the state court action

23   described in the concurrently filed Notice of Removal.

24   DATED:  June 17 , 2008

25
                          By _____
26                            Lorenzo E. Gasparetti
                              Karen Braje
27                            Reed Smith LLP
                              Attorneys for Defendant MORTGAGEIT, INC.
28

                                        1
     _____
     JOINDER IN NOTICE OF REMOVAL OF ACTION

**EXHIBIT  C**

1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10

11   CARLOS PACHECO, an individual,    )    Case No.
                                       )
12              Plaintiff,             )
                                       )    **JOINDER IN NOTICE OF**
13         vs.                         )    **REMOVAL OF ACTION**
                                       )
14   HOMECOMINGS FINANCIAL,            )
     LLC, a Delaware limited liability )
15   company; MORTGAGEIT, INC., a      )
     New York corporation; and DOES 1- )
16   100, Inclusive,                   )
                                       )
17              Defendants.            )
                                       )
18                                     )
                                       )
19   _____ )

20         Defendant MORTGAGEIT, INC. hereby joins in Defendant

21   HOMECOMINGS FINANCIAL, LLC's Notice of Removal to the United States

22   District Court for the Northern District of California of the state court action

23   described in the concurrently filed Notice of Removal.

24   DATED:  June 17 , 2008

25
                     By _____
26                      Lorenzo E. Gasparetti
                        Karen Braje
27                      Reed Smith LLP
                        Attorneys for Defendant MORTGAGEIT, INC.
28

                                    1
     JOINDER IN NOTICE OF REMOVAL OF ACTION