1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 6/29/2010**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CARLOS PACHECO, an individual, | Case Number C 08-3002 JF (HRL) |
| Plaintiff, | ORDER[1] GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| HOMECOMINGS FINANCIAL, LLC, a Delaware Limited Liability Company; MORTGAGEIT, INC., a New York Corporation; and DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee for RALI 2005-Q05, | [re: docket no. 113] |
| Defendants. | |
| MORTGAGEIT, INC., a New York Corporation, | |
| Third Party Plaintiff, | |
| vs. | |
| RELC, INC. dba REAL ESTATE LOAN CENTER, a California Corporation; NANCY LINDNER, an individual; and PEDRO REYES, an individual, | |
| Third Party Defendants. | |

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

## A. Facts

This action arises out of a residential mortgage transaction.  Plaintiff Carlos Pacheco ("Plaintiff") owns and resides at the subject property, which is located at 855 Soquel San Jose Road, Soquel, California.  Second Amended Complaint ("SAC") ¶ 5.  In November 2005, Plaintiff refinanced his home mortgage loan with an Adjustable Rate Note in the amount of $607,200 ("Loan") from lender MortgageIT, Inc. ("MortgageIT").  SAC ¶ 17; Declaration of James D. Campbell (a Director with Deutsche Bank Securities, Inc.) ("Campbell Decl."), Ex. A (Adjustable Rate Note).

Plaintiff asserts that he traveled to Southern California on November 7, 2005 and drove to the office of the Real Estate Loan Centers ("RELC") in Apple Valley, California.  Declaration of Carlos Pacheco ("Pacheco Decl.") ¶ 2.  He claims that on that date he "was provided documents to sign and received a pre-copied set of loan documents, all unsigned." *Id.*  Included among these documents were two copies of a Notice of Right to Cancel ("NRC").  Plaintiff alleges that the NRC's had a pre-inserted transaction date of October 24, 2005; one of the NRC's also bears Plaintiff's signature and a hand-written transaction date of October 27, 2005. *Id.*  Plaintiff asserts that neither of Plaintiff's NRC's "indicates the last day on which [he] could exercise [his] right to rescind the loan." *Id.*  Plaintiff attaches copies of both of the NRC's to his declaration.

Defendants MortgageIT, Defendant Homecomings Financial, LLC ("Homecomings") and Deutsche Bank (collectively, "Defendants") do not dispute that the loan transaction closed at the RELC office in Apple Valley, California; however, they do dispute the dates upon which Plaintiff claims to have executed the Loan documents, including the NRC's.  Defendants contend that Plaintiff executed the Loan documents on November 4, 2005.  Campbell Decl. Exs., A (Adjustable Rate Note dated and notarized November 4, 2005), B (two copies of NRC signed by Plaintiff and dated November 4, 2005).  Nancy Lindner, the notary who was present at the closing of the Loan, testified at her deposition that Plaintiff signed the Loan documents in her presence on November 4, 2005.  Deposition of Nancy Lindner ("Lindner Depo.") 32:19-24 (testifying that Plaintiff signed his loan documents on November 4, 2005); 37:19-25 (testifying

2

1  that it is her custom and practice to record everything she notarizes); 42:24-45:10 (stating that

2  she has never backdated or incorrectly dated her notary public journal and never signed

3  documents without the customer being physically present).  Lindner's notary log book is

4  consistent with her testimony.  *Id.* 30:24-33:14.  Plaintiff's work records from Dominican

5  Hospital reflect that he did not work on November 4, 2005.  Declaration of Karen A. Braje

6  ("Braje Dec."), Ex. B (Timecard Detail Report on Carlos Pacheco).  The same records also show

7  that he did not work on November 7, 2005.  *Id.*

8         MortgageIT transferred its interest in the Loan on or about December 21, 2005.

9  Campbell Decl. ¶ 5 (asserting that MorgageIT transferred and assigned its interest in the Loan "to

10 another entity", but omitting the identity of that entity).  Plaintiff alleges upon information and

11 belief "that MortgageIT's interest in the Loan eventually was assigned or sold to Defendant

12 Deutsche Bank."  SAC ¶ 25.  Deutsche Bank, as trustee for RALI 2005-Q05, acknowledges that

13 it currently holds the beneficial interest in the Loan. Deutsche Bank's Answer ¶ 25 (admitting

14 that it currently holds the beneficial current interest in the loan at issue).  Homecomings became

15 the sub-servicer for the Loan in December 2005.  Declaration of Juan Aguirre (Senior Litigation

16 Analyst for Homecoming) ("Aguirre Decl.") ¶ 3 (stating that "Homecomings began servicing

17 Plaintiff's Loan in December 2005" but "has never been an assignee of the Loan.").

18        In April 2007, Plaintiff's counsel wrote to MortgageIT demanding rescission of the Loan

19 pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635.  SAC ¶ 27, Ex. B.  Plaintiff

20 also sent a similar communication to Homecomings.  SAC ¶ 28, Ex. C.  MortgageIT and

21 Homecomings rejected Plaintiff's demand for rescission.  SAC ¶¶ 27, 28.  In a letter dated

22 August 3, 2007, MortgageIT explained that it believed no basis for rescission existed because the

23 loan file contained dated copies of the NRC which were signed and acknowledged as having

24 been received by Plaintiff on November 4, 2005.  Campbell Decl. ¶ 6, Ex. C (August 3, 2007

25 Letter from Mary Doherty, Deputy General Counsel for MortgageIT, to William J. Purdy, III,

26 Plaintiff's counsel).

27        Plaintiff made his last mortgage payment on April 13, 2009.  Aguirre Decl. ¶ 5.  The

28 Loan currently is in default. *Id*.  Plaintiff estimates that his average monthly income is less than

3

1   $4,000. Deposition of Carlos Pacheco ("Pacheco Depo.") at 85:20-92:20. Plaintiff does not

2   possess any of the "cash out" portion of the Loan he received. *Id.* at 110:3-111:21 (Plaintiff

3   conceding that he no longer possesses any of the $60,000 to $75,000 cash out portion of the

4   Loan). Plaintiff has no other source of liquid funds from which to tender or return the loan

5   proceeds, *Id.* at 162:18-163:6 (testifying that if he cannot refinance his mortgage loan with

6   another lender that he has no other source of funds from which to return the proceeds of the

7   loan), nor has Plaintiff applied to refinance the Loan. *Id.* 160:3-23.

8          In 2008, the Property was appraised at $499,000. Braje Decl., Ex. D (Pacheco's

9   responses to Defendants' Requests for Admissions) at No. 4 ("admitting that he had his property

10  appraised in 2008 for $499,000"). GMAC Mortgage ("GMACM") is the current servicer of the

11  Loan. Aguirre Decl. ¶ 1. In November 2009, GMACM requested a broker price opinion

12  ("BPO") from eMortgage Logic, LLC ("eMortgage"), which offers real estate property valuation

13  services. Aguirre Decl. ¶ 6. eMortgage's November 19, 2009 BPO states that the estimated

14  sales price of the Property is $455,000. *Id.* ¶ 7., Ex. A (BPO prepared by Ed Nosrati of

15  eMortgage estimating the value of the Property at $455,000).

16         Plaintiff, offering evidence that Defendants challenge as inadmissible, *see infra* III.A,

17  asserts that the current value of the Property is $600,000 to $625,000 and that given this

18  valuation he could qualify to refinance the Property at 90-97% of its full value. Declaration of

19  Philip Lewis ("Lewis Decl.") ¶¶ 3, 4; Declaration of William Purdy ("Purdy Decl.") ¶ 4

20  (asserting that an unidentified "broker has valued the property at approximately $600,000.").

21         **B. Procedural history**

22         On May 15, 2008, Plaintiff filed the instant action against MortgageIT and Homecomings

23  in the Santa Cruz Superior Court, alleging claims for rescission and damages under TILA. On

24  June 18, 2008, MortgageIT and Homecomings removed the action to this Court. On September

25  4, 2008, the Court granted an unopposed motion to strike all allegations of damages from the

26  complaint. Subsequently, Plaintiff filed a first amended complaint ("FAC"). On November 5,

27  2009, the Court entered a stipulated order taking the motion to dismiss the FAC off calendar in

28  light of Plaintiff's anticipated request to file a second amended complaint ("SAC"). Plaintiff

4

1  filed the operative SAC on December 29, 2009, re-alleging his previous TILA rescission claim

2  and adding a new defendant (Deutsche Bank).  The SAC also added claims for quiet title and

3  declaratory relief.  Defendants now move for summary judgment.  Plaintiff opposes the motion.

4  For the reasons discussed below, the motion will be granted.

5                              **II. LEGAL STANDARD**

6          A motion for summary judgment should be granted if there is no genuine issue of

7  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

8  56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202

9  (1986).  Material facts are those that might affect the outcome of the case under the governing

10  law.  *Id.* at 248.  There is a genuine dispute about a material fact if there is sufficient evidence for

11  a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The moving party bears the

12  initial burden of informing the Court of the basis for the motion and identifying portions of the

13  pleadings, depositions, admissions, or affidavits that demonstrate the absence of a triable issue of

14  material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

15  (1986).  Where the party moving for summary judgment would not bear the ultimate burden of

16  persuasion at trial, it must either produce evidence negating an essential element of the

17  nonmoving party's claim or defense or show that the nonmoving party does not have enough

18  evidence of an essential element to carry its ultimate burden of persuasion at trial.  *Nissan Fire &*

19  *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets its

20  initial burden, the burden shifts to the nonmoving party to present specific facts showing that

21  there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324.

22          The evidence and all reasonable inferences must be viewed in the light most favorable to

23  the nonmoving party.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626,

24  630-31 (9th Cir. 1987).  Summary judgment thus is not appropriate if the nonmoving party

25  presents evidence from which a reasonable jury could resolve the material issue in its favor.

26  *Liberty Lobby,* 477 U.S. at 248-49; *Barlow v. Ground,* 943 F.2d 1132, 1134-36 (9th Cir. 1991).

27  However, "[a] non-movant's bald assertions or a mere scintilla of evidence in his favor are both

28  insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir.

5

1    2009), citing *Galen v. County of Los Angeles,* 477 F.3d 652, 658 (9th Cir. 2007).

2                                    **III. DISCUSSION**

3            **A.   Evidentiary objections**[2]

4        Defendants object to certain evidence contained in the declarations of Plaintiff, William

5    Purdy, and Philip Lewis, on the grounds of hearsay, lack of foundation, improper lay opinion,

6    contradiction of prior testimony, and/or violation of the best evidence rule.  Hearsay is a

7    statement, other than one made by the declarant, offered in evidence to prove the truth of the

8    matter asserted.  Fed. R. Evid. 801(c).  Hearsay is inadmissible except as provided by the Federal

9    Rules of Evidence, or other rules prescribed by the Supreme Court.  The testimony of a witness

10   who does not have personal knowledge of the subject of his or her testimony is inadmissible.

11   Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony.

12   Fed. R. Evid. 602.  Defendants' objections to evidence are addressed as follows:

13           **1. Lewis declaration**

14           <u>**Statement 1:**</u>

15       Defendants object to Lewis' assertion concerning an appraisal of the Property allegedly

16   performed by an independent appraiser because (1) it constitutes inadmissible hearsay; (2) it

17   lacks foundation; and (3) to the extent it purports to reflect the contents of a written appraisal

18   report, it also violates the best evidence rule.  Lewis asserts that he arranged for a preliminary

19   appraisal review by an unidentified appraiser and that "[t]he valuation came in at $600,000 to

20   $625,000." Lewis Decl. ¶ 3.  The alleged statement that the property is worth $600,000 to

21   $625,000 was made by an unidentified third person, and Lewis' proffered testimony asserts the

22   truth of what he learned from the appraiser.  This is inadmissible hearsay.  The purported

23   valuation was made outside of court, not by the declarant or a party, and is offered in evidence to

24   prove that the subject property has a value of $600,000 to $625,000.

25   _____

26          [2]  Defendants also contend that the declarations of Plaintiff and Lewis violate General

27   Order No. 45 because they do not comport with the rules regarding electronic signatures.
     However, because Defendants' motion is well-taken on the merits, the Court will overlook this

28   technical defect.

                                              6

1    SUSTAINED.

2        **Statement 2:**

3        Defendants object to Lewis' statement that the appraiser's valuation of the subject

4    property "comports with [his] estimate of the current value." Lewis Decl. ¶ 3.  Defendants

5    contend that this statement lacks foundation and is an inadmissible lay opinion. Fed. R. Evid.

6    602 (requiring that a witness may not testify to a matter unless evidence is introduced sufficient

7    to support a finding that the witness has personal knowledge of the matter."); Fed. R. Evid. 701

8    (providing that if a "witness is not testifying as an expert, the witness' testimony in the form of

9    opinions or inferences is limited to those opinions or inferences which are (a) rationally based on

10   the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the

11   determination of a fact in issue, and (c) not based on scientific, technical, or other specialized

12   knowledge within the scope of Rule 702.").  Lewis, apart from the purported statement of the

13   unidentified appraiser, alleges no facts that would provide foundation for his own estimate of the

14   current value of the subject property.  As Defendants point out, Lewis does not state that he

15   inspected the property or identify the factors he considered in forming his opinion.

16   SUSTAINED.

17       **Statement 3:**

18       Defendants object to Lewis' statement that, "[a]t the valuation of $600-$625,000, the

19   Pacheco's [sic] would, in my opinion and experience, qualify for a refinance for at least 90% of

20   the value.  It is possible that they could refinance at 97% of the current value." Lewis Decl. ¶ 4.

21   Defendants contend that this statement lacks foundation and constitutes improper lay opinion.

22   Lewis does assert that he has two and a half years of experience as a licensed broker with

23   Financial Strategies Mortgage Services and six years of experience as a loan officer "arranging

24   loans for homeowners" in the Soquel, California.  Lewis Decl. ¶¶ 1, 2.  However,

25   notwithstanding that professional experience, Lewis' conclusion that Plaintiff would qualify for

26   refinancing at 90% or more of the value of the Property lacks foundation and is not based

27   reasonably on his perception.  Fed. R. Evid. 602; Fed. R. Evid. 701.  Plaintiff offers no evidence

28   that Lewis was aware of or considered the amount of Plaintiff's existing mortgage, credit history,

7

1  income information, or loan payment record.

2  SUSTAINED.

3  **2. Purdy declaration**

4  <u>Statement 1:</u>

5  Defendants object to Purdy's statement that, "The broker has valued the property at

6  approximately $600,000 and stated that Mr. Pacheco could readily qualify for a loan to provide

7  the tender amount, at this price point." Purdy Decl. ¶ 4. Defendants contend that Purdy's

8  statement is inadmissible because it (1) constitutes inadmissible hearsay; (2) lacks foundation;

9  and (3) violates the best evidence rule. As discussed above, the alleged statement that the

10  property is worth approximately $600,000 and that Plaintiff could qualify for a loan to provide

11  the tender amount was made by an unidentified broker and the proffered testimony asserts the

12  truth of what Purdy learned from the broker. This is inadmissible hearsay.

13  SUSTAINED.

14  **3. Plaintiff's declaration**

15  <u>Statement 1:</u>

16  Defendants object to Plaintiff's statement that, "While I am not sure of all the documents

17  I did sign on that day, I am sure these are the only Notices of Right to Cancel I received."

18  Pacheco Decl. ¶ 2 (referring back to two NRC forms with printed dates of October 24, 2005, one

19  of which is signed and bears a hand-written date of October 27, 2005). Defendants contend that

20  Plaintiff's statement is inadmissible because it contradicts his prior deposition testimony. During

21  his deposition on May 29, 2009, Plaintiff testified that he did not remember having seen the NRC

22  dated October 24, 2005. Supplemental Declaration of Karen A. Braje ("Supp. Braje Decl."), Ex.

23  A (Deposition of Plaintiff) at 131:7-132:20 (testifying that he did not remember having seen the

24  NRC dated October 24 although he did recognize his signature and stating that he did not

25  remember whether he received any other NRC forms in the closing process). The Ninth Circuit

26  has held that "[a] party cannot create a genuine issue of material fact to survive summary

27  judgment by contradicting his earlier version of the facts." *Block v. City of Los Angeles,* 253

28  F.3d 410, 419 n. 2 (9th Cir. 2001), citing *Radobenko v. Automated Equipment Corp*, 520 F.2d

8

1    540, 544 (9th Cir. 1975) (holding that a summary judgment motion cannot be defeated when the

2    only issue of fact in the proofs results from the inconsistent statements made by plaintiff the

3    deponent and plaintiff the affiant).  However, while *Block* and *Radobenko* held that inconsistent

4    testimony cannot create a triable issue of fact, they do not address the admissibility of the

5    testimony as such.  Whether Plaintiff's statements in fact are inconsistent and the effect of such

6    inconsistency on the instant motion is addressed below.

7    OVERRULED.

8        **Statement 2:**

9        Plaintiff states that "[a]ccording to the loan documents that [he] received, [he] was

10   charged $9,124.78 in fees and costs for obtaining this loan from MortgageIT."  Pacheco Decl. ¶

11   3.  Defendants contend that Plaintiff's statement is inadmissible because it violates the best

12   evidence rule.  The best evidence rule provides that "[t]o prove the content of a writing,

13   recording, or photograph, the original writing, recording, or photograph is required, except as

14   otherwise provided in these rules or by Act of Congress."  Fed. R. Evid. 1002; *Los Angeles New*

15   *Service v. CBS*, 305 F.3d 924, 935-36 (9th Cir. 2002), *as amended by* 313 F.3d 1093 (9th Cir.

16   2002) (concluding that plaintiff's report of what it perceived was insufficient and that plaintiff

17   was required to produce the original or a duplicate or at least to explain why it could not do so.).

18   Plaintiff does not append to his declaration the loan documents to which he refers, nor does he

19   provide any explanation as to why he could not do so.  None of the exceptions to the best

20   evidence rule appears to apply.  *See* Fed. R. Evid. 1004, 1005, 1006, 1007 (providing an

21   exception to the best evidence rule when the originals are lost, destroyed, unobtainable, in the

22   possession of opponent, relate to collateral matters, voluminous, the admission of a party, or are

23   of public record).

24   SUSTAINED.

25       **Statement 3:**

26       Defendants object to Plaintiff's assertion that, "[a]ccording to [his] records, [he] ha[s]

27   paid the following amounts on the loan: $23,436.00 in 2006, $25, 193.76 in 2007, $27,083.28 in

28   2008, and $4,842 in 2009."  Pacheco Decl. ¶ 4.  Defendants contend that this statement is

9

1   inadmissible because it contradicts his earlier testimony and because it violates the best evidence

2   rule.  Supp. Braje Decl., Ex. B (Plaintiff's Amended Responses to Revised First Set of Requests

3   for Production of Documents) at 10 (asserting that after a diligent search and reasonable inquiry

4   Plaintiff was unable to locate any responsive documents to Defendants' requests for all

5   documents and/or communications relating to the current balance on the loan and the last

6   payment on the loan).  As discussed above, *see supra* III.A.3.1, the fact that Plaintiff's

7   declaration may contradict his prior admission does not make the statement inadmissible, but any

8   inconsistency properly is considered in determining the merits of the instant motion.  *Block*, 253

9   F.3d at 419 n.2.  However, the Court agrees with Defendants that the statement violates the best

10  evidence rule.

11  SUSTAINED.

12      **B. Merits**

13          **1. TILA Rescission Claim**

14              **a. Right to rescind**

15      Plaintiff alleges that Defendants violated 15 U.S.C. § 1635 and 12 C.F.R. § 226.23

16  ("Regulation Z") by failing to provide Plaintiff with two copies of the NRC that clearly and

17  conspicuously disclosed the date of the transaction and the date that the statutory rescission

18  period expired.  SAC ¶ 31.  TILA requires a creditor to provide a borrower notice of his right to

19  rescind the agreement within three days of its execution.  15 U.S.C. § 1635(a).  It is undisputed

20  that the Loan was funded on November 9, 2005.  However, the parties do dispute:  (1) whether

21  the NRC's that Plaintiff actually *received* were materially defective because they indicated a

22  transaction date of October 24, 2005 and a signing date of October 27, 2005; and (2) whether the

23  copies of the NRC offered by Defendants which bear a signature date of November 4, 2005

24  actually was *signed* by Plaintiff on that date, or, as asserted by Plaintiff, on November 7, 2005.

25      With respect to the first dispute Defendants offer two copies of a signed NRC with a

26  transaction and signature date of November 4, 2005 and a rescission date of November 8, 2005.

27  Campbell Decl., Ex. B.  The form states in relevant part that "[by] signing below, I, the

28  undersigned, hereby acknowledge that on the date listed above I received two (2) completed

10

1  copies of this notice of right to cancel in the form prescribed by law advising me of my right to

2  cancel this transaction." *Id.* Written acknowledgment of receipt creates a rebuttable presumption

3  that Defendants delivered two properly completed NRC forms. 15 U.S.C. § 1635(c).

4         Plaintiff asserts that when he signed the Loan documents he received "a pre-copied set of

5  loan documents, all signed.  Included in this set of the loan documents were two Notice of Right

6  to Cancel forms with printed dates of October 24, 2005.  One of the two forms is signed and has

7  a hand-written date of October 27, 2005.  Neither of these forms indicates the last day on which I

8  could exercise my right to rescind the loan." Pacheco Decl. ¶ 2.  Plaintiff also appends a copy of

9  two NRC forms issued by MortgageIT, both of which bear a printed date of transaction of

10  October 24, 2005 and one of which is signed and dated October 27, 2005.

11         However, Plaintiff's possession of NRC's with the October dates is not necessarily

12  inconsistent with his receipt of accurate NRC's dated November 4, 2005.[3]  In fact, it is

13  undisputed that Plaintiff, as part of his initial disclosures, produced copies of NRC's signed and

14  dated November 4, 2005.  Supp. Braje Decl., ¶ 11, Ex. C (two copies of NRC dated November 4,

15  2005).

16         In his opposition to the instant motion, Plaintiff asserts that "[w]hile I am not sure of all

17  the documents I did sign on that day, I am sure these are the only Notices of Right to Cancel I

18  received." Pacheco Decl. ¶ 2 (referring to two NRC forms with printed transaction dates of

19  October 24, 2005, one of which is signed and has a hand-written date of October 27, 2005).  This

20  statement is contradicted by Plaintiff's own prior deposition testimony.  During his deposition on

21  May 29, 2009, Plaintiff testified that he did not remember having seen the NRC dated October

22  24, 2005 and also stated that he did not remember whether he received any other NRC forms in

23  the closing process.  Supplemental Declaration of Karen A. Braje ("Supp. Braje Decl."), Ex. A

24  (Deposition of Plaintiff) at 131:7-132:20 (testifying that he did not remember whether he

25  received any other NRC forms in the closing process).  "A party cannot create a genuine issue of

26

27         [3] Defendants suggest in their reply papers that the October 24 documents may relate to an
    earlier aborted attempt by Plaintiff to obtain refinancing.  There is no evidence in the record
28  supporting this suggestion.

11

1   material fact to survive summary judgment by contradicting his earlier version of the facts.

2   *Block v. City of Los Angeles,* 253 F.3d 410, 419 n. 2 (9th Cir. 2001), citing *Radobenko v.*

3   *Automated Equipment Corp*, 520 F.2d 540 (9th Cir. 1975) (holding that a summary judgment

4   motion cannot be defeated when the only issue of fact in the proofs results from the inconsistent

5   statements made by plaintiff the deponent and plaintiff the affiant).

6         The second dispute between the parties concerns the actual date of Plaintiff's signature on

7   the Loan documents.  Defendants argue that the apparent signature date of November 4, 2005

8   establishes that they complied with TILA and provided Plaintiff with the required three-day

9   period during which he could rescind the transaction.  Campbell Decl., Ex B (two copies of the

10  NRC reflecting a transaction and signing date of November 4 and the date by which Plaintiff

11  could cancel the contract as November 8).  Defendants also present the deposition testimony of

12  Nancy Lindner, the notary who recorded the closing of Plaintiff's Loan.  Lindner testified that the

13  closing occurred on November 4, and that Plaintiff signed the Loan documents in her presence on

14  that date.  Lindner Depo. 32:19-24 ("Q. Can you read us the entry relating to Plaintiff Carlos

15  Pacheco in your notary public journal on Exhibit 3? A. It shows that I dated and signed the day

16  that he was in and signed his loan documents, which was November 4, 2005."); 37:18-25 ("Q.

17  Would it have been your custom and practice to date and notarize a document on the date it was

18  not signed? A. No. Q. Would it have been your custom and practice to notarize a document if the

19  signatory person was not present? A. No."); Ex. 3 (Lindner's Log Book) (reflecting an entry on

20  November 4, 2005 and Plaintiff's signature).

21        In response, Plaintiff submits his own declaration in which he states that "[o]n November

22  7, 2005, [he] flew to Southern California and drove to the office of the Real Estate Loan Centers

23  in Apple Valley, California, to sign loan documents to secure a home loan from MortgageIT in

24  the amount of $607,200.00." Pacheco Decl. ¶ 2.  The date of Plaintiff's signature on the Loan

25  documents, including the NRC's, is a material fact.  The NRC's offered by Defendants notify the

26  borrower that he may cancel the loan by November 8, 2005.  If Plaintiff in fact signed the Loan

27  documents on November 7, 2005, his "right to rescind the transaction until midnight of the third

28  business day following the consummation of the transaction" would not have been disclosed

12

1   clearly and conspicuously as required by TILA. 15 U.S.C. § 1635. Defendants do not dispute

2   that this issue is material but they argue that Plaintiff's statement is only a "self-serving

3   declaration i[n] an effort to create a triable issue of fact as to the existence of a TILA violation."

4   However, there is no "prohibition against considering all affidavits that are self-serving." *Jones*

5   *v. Tozzi*, No. 1:05-CV-0148 OWW DLB, 2007 WL 433116, at *11 (E.D. Cal. Feb. 7, 2007)

6   (explaining that the Ninth Circuit "merely permits a court to disregard self-serving affidavits

7   which are contradicted by the Plaintiff's own prior statements and other forms of undisputed

8   evidence."), citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). In this

9   instance, Plaintiff's sworn statement is not contradicted by his own prior testimony or by

10  undisputed evidence. While it has grave doubts about Plaintiff's statement in light of Lindner's

11  deposition testimony, the Court may not weigh evidence on a motion for summary judgment.

12                              **b. Three-day rescission period**

13          TILA provides a borrower with a three-day period within which to rescind a transaction.

14  15 U.S.C. **§** 1635(a). Defendants contend that because Plaintiff did not rescind the transaction

15  within three days, the instant action is time-barred. However, when a defendant does not comply

16  with TILA's disclosure requirements, the borrower's right to demand rescission extends for three

17  years. 15 U.S.C. § 1635(f). It is undisputed that Plaintiff sent a notice of rescission to

18  MortgageIT and Homecomings in April 2007 and instituted this action on May 15, 2008.

19  Because there is a genuine issue of material fact as to Defendants' compliance with Section

20  1635(a), the Court concludes that the question of whether Plaintiff's rescission claim is time-

21  barred cannot be determined on summary judgment.

22                              **c. Ability to tender**

23          The Ninth Circuit has held that it is within a district court's "discretion to condition

24  rescission on tender by the borrower of the property he had received from the lender."

25  *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th Cir. 2003) (citation omitted). In

26  affirming a district court's grant of summary judgment based upon plaintiff's failure to

27  demonstrate an ability to tender following rescission, the circuit court reasoned:

28          [T[here is no reason why a court that may alter the sequence of procedures *after*

1
2
3
4
5

deciding that rescission is warranted, may not do so *before* deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

6   *Id.* at 1173 (emphasis in original).

7        Plaintiff concedes that the only way he will be able to obtain the funds necessary to effect

8   tender is to refinance his home.  Pacheco Depo. 160:3-7; 162:18-163:6.  He asserts that he can

9   qualify for refinancing based upon the current value of the property and that he will be able to

10  tender if he succeeds on his rescission claim.  However, Plaintiff offers no *admissible* evidence

11  that would create a genuine issue of material fact with respect to his ability to tender.[4]  *See*

12  III.A.1, 2 (sustaining Defendants' objections to the statements by Purdy and Lewis concerning

13  the value of the property and Plaintiff's ability to refinance).

14       Alternatively, Plaintiff urges the Court to exercise its discretion under *Yamamoto*, and

15  deny summary judgment based solely on his present inability to tender.  Plaintiff points to

16  *Yamamoto's* direction that a district court should make this determination "on a case-by-case

17  basis, in light of the record adduced."  *Yamamoto*, 329 F.3d at 1173.  He argues that the

18  circumstances and nature of his loan have yet to be proved and that Defendants have not

19

20
21
22
23
24
25
26
27
28

[4]  Even considering the inadmissible evidence submitted on his behalf, Plaintiff fails to establish a genuine issue of material fact upon which a reasonable jury could find in his favor. Lewis, a licensed broker and loan officer, makes three relevant statements: (1) "I arranged for a preliminary appraisal review by an independent appraiser last week.  The valuation came in at $600,000 to $625,000," Lewis Decl. ¶ 3; (2) "This comports with my estimate of the current value as well," *id.*; (3) "At the valuation of $600-$625,000, the Pacheco's would, in my opinion and experience, qualify for a refinance for at least 90% of the value.  It is possible they could refinance at 97% of the current value.  My opinion on this is based on programs available in the marketplace as of this date." *Id.* ¶ 4.  Plaintiff presents no evidence that Lewis inspected the property before providing an estimated value.  Moreover, Plaintiff does not demonstrate that Lewis considered any of the other relevant factors in determining whether Plaintiff would qualify for a loan (e.g., Plaintiff's credit history, income, or loan payment record).  At oral argument, Plaintiff's counsel acknowledged that Lewis did not consider lending criteria other than the purported value of the property.

14

1 | explained why they failed to honor his rescission demand.  However, the evidence in the record
2 | is otherwise.  In a letter dated August 3, 2007, MortgageIT explained that it believed that there
3 | was no basis for rescission because the loan file contained dated copies of the NRC which were
4 | signed and acknowledged as having been received by Plaintiff on November 4, 2005.  Campbell
5 | Decl. ¶ 6, Ex. C (August 3, 2007 Letter from Mary Doherty, Deputy General Counsel for
6 | MortgageIT, to William J. Purdy, III, Plaintiff's Counsel).  The assertions in this letter are fully
7 | consistent with Defendants' arguments in support of the instant motion.  Defendants also offer
8 | their own Broker Price Opinion dated November 19, 2009 that estimates the value of the
9 | property at approximately $455,000.  Aguirre Decl. ¶ 7., Ex. A (BPO prepared by Ed Nosrati of
10 | eMortgage estimating the value of the Property at $455,000 on November 19, 2009).  Even
11 | accepting Plaintiff's calculation of the tender amount – $517,520.18 – it appears from the only
12 | admissible evidence that Plaintiff would not be able to refinance the property at a value sufficient
13 | to generate proceeds in this amount.

14 | At the end of the day, Plaintiff "will not be entitled to rescission" unless he can tender
15 | the principal balance of the loan.  *See Clemens v. J.P. Morgan Chase Nat. Corporate Services,*
16 | *Inc.,* No. 09-3365 EMC, 2009 WL 4507742, at *5 (N.D.Cal. Dec.1, 2009).  Accordingly, and
17 | particularly given the weakness of the evidence Plaintiff does present, it makes little sense to let
18 | the instant rescission claim proceed to trial and needlessly deplete the resources of the parties and
19 | the Court.  Pursuant to the Court's discretion under *Yamamoto*, the motion for summary
20 | judgment will be granted.[5]

21 | ## 2. Quiet Title

22 | "The purpose of a quiet title action is to establish one's title against adverse claims to real
23 | property. A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the
24 | rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of

25

26 | [5] Homecomings moves for summary judgment on the additional basis that it is only a former servicer of the loan, and not the originator or an assignee. Aguirre Decl. ¶ 3.  TILA does
27 | not apply to servicers of a loan.  15 U.S.C. § 1641(a), (c) and (f).  Plaintiff does not oppose Homecoming's legal argument.  Accordingly, the motion will be granted as to Homecomings on
28 | this basis as well.

Case No. C 08-03002 JF (HRL)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFLC1)

Trust.'" *Santos v. Countrywide Home Loans,* No. Civ. 2:09-02642 WBS DAD, 2009 WL

3756337, at *4 (E.D. Cal. Nov. 6, 2009), quoting *Kelley v. Mortgage Elec. Reg. Sys., Inc.,* 642

F.Supp.2d 1048, 1057 (N.D. Cal. 2009).  "[A] mortgagor cannot quiet his title against the

mortgagee without paying the debt secured." *Watson v. MTC Financial, Inc.,* No. 2:09-CV-01012

JAM-KJM, 2009 WL 2151782, at *4 (E.D. Cal. Jul. 17, 2009), quoting *Shimpones v. Stickney,*

219 Cal. 637, 649, 28 P.2d 673 (1934); *Miller v. Provost*, 26 Cal.App. 4th 1703, 1707 (1994)

("[A] mortgagor of real property cannot, without paying his debt, quiet his title against the

mortgagee"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 39 Cal.App.3d 475 (1974) ("The cloud

upon...title persist until the debt is paid").  As discussed above, *see supra* III.B.1.C, Plaintiff

concedes that he has not paid the debt secured by the mortgage and does not have the present

ability to do so. Moreover, Plaintiff does not present evidence that creates a genuine issue of

material fact with respect to his ability to tender if rescission were granted.  Accordingly, the

motion for summary judgment will be granted with respect to Plaintiff's quiet title claim.[6]

### 3. Declaratory Relief

Defendants move for summary judgment with respect to Plaintiff's claim for declaratory

relief on the basis that it is duplicative of Plaintiff's other claims.  Plaintiff offers no opposition

to Defendants' arguments.  The motion is well-taken.  *California Ins. Guarantee Assn. v.*

*Superior Court,* 231 Cal.App.3d 1617, 1624, 283 Cal.Rptr. 104, 108 (1991) ("The object of the

[declaratory relief] statute is to afford a new form of relief where needed and not to furnish a

litigant with a second cause of action for the determination of identical issues."); *Brittain v.*

---

[6]  Defendants contend that the Court should grant summary judgment in favor of
MortgageIT and Homecomings on this claim because neither defendant claims an interest in the
Loan or in the title to the property that secures the Loan.  Campbell Decl. ¶ 7 (stating that
"MortgageIT does not claim any current interest in the Loan or in the title to the property that
serves as security for the Loan."); Aguirre Decl. ¶ 9 (asserting that "Homecomings does not
claim a current interest in the Loan or in the title to the property that serves as security for the
Loan.").  In order to succeed on a claim for quiet title, a plaintiff must provide evidence of "[t]he
adverse claims to the title of the plaintiff against which a determination is sought."  Cal. Civ.
Code. P. 761.020(c).  Plaintiff does not present any contrary evidence.  Accordingly, because
there is no disputed issue of material fact, the Court will grant summary judgment to MortgageIT
and Homecomings on this basis as well.

1   *Indymac Bank,* No. C-09-2953 SC, 2009 WL 2997394, at *5 (N.D.Cal. Sept.16, 2009), ("[T]his

2   'cause of action' is ultimately a request for relief [and], in order to weigh it the Court must look

3   to the underlying claims."), citing *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 92 (6th Cir. 1997).

4                                          **IV. ORDER**

5           Good cause therefor appearing, Defendants' motion for summary judgment is

6   GRANTED.

7   IT IS SO ORDERED.

8   DATED: June 29, 2010

9

10                                          _____

11                                          JEREMY FOGEL
                                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 08-03002 JF (HRL)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(JFLC1)