**E-Filed 2/3/2011**

1

2

3

4

5

6

7

8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| CARLOS PACHECO, an individual, | Case Number C 08-3002 JF (HRL) |
| Plaintiff, | ORDER[1] DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR STAY AND INJUNCTION PENDING APPEAL |
| vs. | |
| HOMECOMINGS FINANCIAL, LLC, a Delaware Limited Liability Company; MORTGAGEIT, INC., a New York Corporation; and DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee for RALI 2005-Q05, | [Re: Docket No. 140] |
| Defendants. | |
| MORTGAGEIT, INC., a New York Corporation, | |
| Third Party Plaintiff, | |
| vs. | |
| RELC, INC. dba REAL ESTATE LOAN CENTER, a California Corporation; NANCY LINDNER, an individual; and PEDRO REYES, an individual, | |
| Third Party Defendants. | |

[1] This disposition is not designated for publication in the official reports.

1    Plaintiff Carlos Pacheco ("Pacheco"), proceeding by *ex parte* application pursuant to

2    Fed. R. App. P. 8(a) and Fed. R. Civ. P. 62(c), seeks a stay of this Court's judgment dated July

3    15, 2010 and an injunction prohibiting foreclosure on his home pending disposition of his appeal

4    of the judgment to the Ninth Circuit Court of Appeals. Defendants Homecomings Financial LLC

5    ("Homecomings"), MortgageIT, Inc. ("MortgageIT"), and Deutsche Bank Trust Company

6    Americas, as Trustee for RALI Series 2005-QO5 Trust, Mortgage Asset-Backed Pass-Through

7    Certificates, Series 2005-QO5 ("Deutsche Bank") (collectively "Defendants") oppose the

8    application.  As explained below, the Court concludes that Pacheco has not shown that he is

9    likely to prevail on the merits.  Accordingly, the application will be denied.

10                                    **I. BACKGROUND**

11    This action arises out of a residential mortgage transaction involving real property

12    located at 855 Soquel San Jose Road, Soquel, California 95073 ("the Property").  Second

13    Amended Complaint ("SAC") ¶ 4.  Pacheco owns and resides at the Property.  Mulligan Decl. in

14    Support of *Ex Parte* Application for Stay and Injunction On Appeal ("Mulligan Decl.") ¶ 6.  In

15    November 2005, Pacheco refinanced the Property with an Adjustable Rate Note from

16    MortgageIT in the amount of $607,200 ("the Loan").  SAC ¶ 17; Campbell Decl. in Support of

17    Motion for Summary Judgment ("Campbell Decl."), Ex. A.

18    In April 2007, Pacheco sought to rescind the Loan, claiming that the refinance

19    transaction violated the Truth in Lending Act, 15 U.S.C. § 1635, *et seq.* ("TILA")  because

20    MortgageIT provided him with improper Notice(s) of Right to Cancel ("NRC's") that contained

21    a pre-inserted transaction date of October 24, 2005, and failed to disclose accurately the last date

22    upon which he could exercise his right to rescind the Loan.  SAC, Exs. B and C (copies of

23    rescission notices sent to MortgageIT and Homecomings).  Pacheco later claimed that the

24    transaction also violated TILA because the loan documents were executed on November 7, 2005,

25    but had been back-dated to represent a transaction date of November 4, 2005.  Pacheco Decl. in

26    Support of Opposition to Motion for Summary Judgment ("Pacheco Decl.") at ¶ 2.

27    On May 15, 2008, after MortgageIT and Homecomings refused to rescind the loan,

28    Pacheco filed a complaint in the Santa Cruz Superior Court, alleging violations of TILA.

1    MortgageIT and Homecomings removed the action to this Court on June 8, 2008.  After

2    conducting discovery, Pacheco sought leave to amend his complaint to add Deutsche Bank as an

3    additional defendant and to add claims to quiet title and for declaratory relief.

4            Defendants subsequently moved for summary judgment, contending that: (1) they did not

5    violate TILA; (2) even if there were a TILA violation, Pacheco was unable to tender the loan

6    proceeds as required to obtain  rescission; and (3) Pacheco's claim for rescission was time-

7    barred.  In opposing the motion, Pacheco asserted that: (1) Defendants' alleged actions violated

8    TILA;  (2) his claim was not barred by the statute of limitations; and (3) there was a factual

9    dispute as to his ability to tender based upon the declaration of Philip Lewis, a licensed real

10   estate broker, who opined that Pacheco possibly could refinance his home for 97% of its current

11   value.[2]  Defendants' objected to the Lewis declaration.  The Court sustained the objections,

12   finding that Lewis's statements contained inadmissible hearsay, lacked foundation, and

13   constituted inadmissible opinion.  The Court then granted summary judgment, concluding that

14   without the Lewis declaration there was no genuine issue of material fact with respect to

15   Pacheco's ability to tender–and thus no practical purpose in permitting rescission even if

16   rescission otherwise were warranted.[3]

17

18

19   _____

20          [2] Lewis valued the Property at between $600,000 and $625,000.  Lewis Decl. in Support
     of Opposition to Motion for Summary Judgment ("Lewis Decl.") at ¶ 3.  As noted above, the
21   amount of the MortgageIT loan was $607,200, which included a cash-out component of
     approximately $60,000-$75,000.  *See* Motion for Summary Judgment at 1:16-19; Pacheco
22   Deposition at 110:3-111:21.  Based upon Lewis's assessment, Pacheco could have refinanced his
     home for at least $540,000.  Opp. Br. to Motion for Summary Judgment at 6:16-17.  Pacheco
23   claimed that this would have been more than sufficient to meet his tender obligation, presumably
     because he continued making payments on the Loan until April 2009.  *Id.*; Aguirre Decl. in
24   Support of Motion for Summary Judgment ("Aguirre Decl.") at ¶ 5.

25

26          [3] Although it did find that there was a factual dispute as to whether the loan documents
     had been misdated, the Court deemed the issue irrelevant in light of Pacheco's inability to
27   tender, asserting that, "it makes little sense to let the instant rescission claim proceed to trial and
     needlessly deplete the resources of the parties and the Court."  Order Granting Defendants'
28   Motion for Summary Judgment ("MSJ Order") at 15, Dkt. 127.

Pacheco filed a timely notice of appeal on August 11, 2010.[4]  On appeal, Pacheco argues that: (1) *Yamamoto v. Bank of New York*, 329 F.3d 1167 (9th Cir. 2003) does not permit a district court to decide a contested tender issue on summary judgment; (2) even if *Yamamoto* authorizes such a determination, it was improper for this Court to shift the burden of production[5] to Pacheco; and (3) the Court abused its discretion in rejecting Pacheco's evidence of ability to tender.

Since Pacheco filed his appeal, Defendants have begun foreclosure proceedings on the Property by recording a Notice of Default.[6]  On January 14, 2011, the Court of Appeals issued an order enjoining Defendants from foreclosing on Pacheco's real property for a period of not more than three weeks from the date of the order, pending consideration of the instant application by this Court.[7]

## II. LEGAL STANDARD

Fed. R. App. P. 8(a)(1) provides that ordinarily a party must move first in the district court when seeking a stay of the court's judgment pending appeal or to request an injunction while an appeal is pending.  *See also* Fed. R. Civ. P. 62(c).  In the wake of the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365 (2008), there has been some question as to the proper standard for courts to apply when ruling on a motion for such injunctive relief.

Historically, the Ninth Circuit has employed a sliding scale approach–at one end

---

[4] Notice of Appeal, dated August 11, 2010, Dkt. 134.  Although the Court did not address the cross-action brought by Third Party Plaintiff MortgageIT in its MSJ Order, the Judgment is final and appealable, as the action brought by MortgageIT was reactive only and was rendered moot by the granting of summary judgment.  *See* Appellees' Brief at 5 n.2. *available at* www.pacer.gov.

[5] Although Pacheco references the "burden of proof" throughout his argument, it is clear that he actually is referring to the burden of production.

[6] Mulligan Decl., Ex. B.

[7] Order issued by the Ninth Circuit Court of Appeals, dated January 14, 2011, Dkt. 141, Exhibit to Plaintiff's *Ex Parte* Application for Order Shortening Time.

4

1   requiring parties to show a probability of success on the merits and a possibility of irreparable

2   injury or, at the other end, the existence of serious questions going to the merits of the case and a

3   balance of hardships that tips sharply in favor of the moving party.  *See, e.g., Lands Council v.*

4   *McNair*, 537 F.3d 981, 987 (9th Cir. 2008); *Golden Gate Restaurant Ass'n v. City and County of*

5   *San Francisco*, 512 F.3d 1112, 1115-16 (9th Cir. 2008).  When the Supreme Court analyzed the

6   Ninth Circuit's approach in *Winter*, the majority opinion made no reference to the validity of the

7   sliding scale analysis, explaining only that, "A plaintiff seeking a preliminary injunction must

8   establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

9   the absence of preliminary relief, that the balance of equities tips in his favor, and that an

10  injunction is in the public interest."  577 F.3d at 374.

11      In *Alliance for the Wild Rockies v. Cottrell*, No. 09-35756, 2011 U.S. App. Lexis 1473, at

12  *20-21 (9th Cir. 2011), the Ninth Circuit held that the sliding scale approach still is viable in the

13  post-*Winter* era, but that plaintiffs must satisfy each of the *Winter* factors.

14      [T]he "[s]erious questions" approach survives *Winter* when applied as part of the
        four-element *Winter* test.  That is, "serious questions going to the merits" and a
15      balance of hardships that tips sharply towards the plaintiff can support issuance of
        a preliminary injunction, so long as the plaintiff also shows that there is a
16      likelihood of irreparable injury and that the injunction is in the public interest.

17                                  **III. DISCUSSION**

18  **A. Likelihood of Irreparable Harm**

19      Pacheco contends that he is in imminent danger of losing his home absent a stay of this

20  Court's judgment and an injunction prohibiting foreclosure while the judgment is on appeal.  He

21  cites *Stockton v. Newman* 148 Cal.App.2d 558 (1957) and *Bisno v. Sax* 175 Cal.App.2d 714

22  (1959) for the proposition that the deprivation of property constitutes irreparable harm under

23  California law.   He argues that, should his home be sold, he also will lose his right to review on

24  the merits, as a plaintiff's right to rescind is extinguished upon a sale of the relevant property.  15

25  U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of

26  consummation of the transaction or upon the sale of the property, whichever occurs first"); *See*

27  *also* Reg. Z §§ 226.15(a)(3), 226(a)(3).  Given these assertions, the Court concludes that

28

                                            5

1    Pacheco has demonstrated more than a mere possibility of irreparable harm; indeed, he has

2    demonstrated that such harm is likely to occur.

3    **B.  Likelihood of Success on the Merits**

4         Pacheco argues that "the 'success on the merits' factor cannot be rigidly applied because

5    if it were, [a stay] would seldom, if ever, be granted because the district court would have to

6    conclude that it was probably incorrect in its determination on the merits."  *Protect Our Waters*

7    *v. Flowers*, 337 F.Supp.2d 882, 884 (E.D. Cal. 2004).  He contends that district courts properly

8    should "stay their own orders when they have ruled on an admittedly difficult legal question . . ."

9    *Id.*  Here, however, and contrary to Pacheco's argument, the Court did not rule on unsettled law

10   or a difficult legal question in granting summary judgment for Defendants.  Rather, it adhered to

11   the well-established Ninth Circuit rule that it is within the equitable discretion of the courts to

12   "modify the sequence of rescission events" in order to ensure that the borrower is able to "repay

13   the loan proceeds before going through the empty (and expensive) exercise of a trial on the

14   merits." *Yamamoto* at 1173; *Ljepava v. M.L.S.C. Props., Inc.*, 551 F.2d 935, 944 (9th Cir. 1975)

15   "a trial judge ha[s] the discretion to condition rescission on tender by the borrower of the

16   property he had received from the lender."  (citing *Palmer v. Wilson*, 502 F.2d 860, 863-64 (9th

17   Cir.1974)).[8]

18   **1.  Whether District Courts May Determine Contested Issues Related to Tender on**

19   **Summary Judgment**

20        Pacheco claims that a serious legal question exists with respect to whether a court may

21   decide a contested issue of ability to tender at the summary judgment stage.  However, no

22   admissible evidence of Pacheco's ability to tender was presented in opposition to Defendants'

23   motion for summary judgment.  Pacheco attempted to raise a factual dispute by introducing

24   Lewis's declaration, in which Lewis opined that Pacheco might be able to qualify for refinancing

25

26

27

28        [8]  In the general rescission sequence, the lender is required to release its security interest
     in the property before the borrower tenders back the loan proceeds.  15 U.S.C. § 1635(b).

6

based on the current value of the Property.[9]   The Court excluded the declaration after

determining that it contained inadmissible hearsay, lacked foundation, and constituted improper

opinion.   In its entirety, the declaration reads as follows:

> I, Philip Lewis, declare as follows:
>
> 1.   I am a licensed broker with Financial Strategies Mortgage Services, a mortgage brokerage with offices at 621 Capitola Avenue, Capitola, California 95010.
>
> 2.   I have been a loan officer for 2 and a half years.   I specialize in the real estate market in this area and am very familiar with current home values in Soquel, California.   I have been arranging loans for homeowners in this area for 6 years.   While the real estate market remains in some turmoil, values in the Soquel area have actually been increasing in recent months.
>
> 3.   Mr. Purdy of Simmons & Purdy requested that I ascertain the current value of the Pacheco home at 855 Soquel San Jose Road, Soquel, California.   I arranged for a preliminary appraisal review by an independent appraiser last week.   The valuation came in at $600,000 to $625,000.   This comports with my estimate of the current value as well.
>
> 4.   At the valuation of $600-$625,000, the Pacheco's would, in my opinion and experience, qualify for a refinance for at least 90% of the value.   It is possible they could refinance at 97% of the current value.   My opinion on this is based on programs available in the marketplace as of this date.
>
> I declare under penalty of perjury under the laws of the United States of America that all of the foregoing is true and correct and that this declaration was signed in Capitola, California, on June 10, 2010.

Lewis Decl., Dkt. 122, Ex. 2.

The Court ruled that the alleged valuation of $600,000 to $625,000 was inadmissible

hearsay because it was made by an unidentified appraiser and was offered for the truth of the

matter asserted.   MSJ Order at 6.   The Court also concluded that Lewis's statement that the

appraiser's valuation of the subject property "comports with [Lewis's] estimate of the current

value" lacked foundation and constituted improper opinion because Lewis did not provide a

---

[9] Pacheco conceded that he could tender the loan proceeds only by refinancing his home. Pacheco Deposition 160:3-7; 162:18-163:6.   There is nothing in the record indicating that Pacheco ever has sought a loan modification from Defendants, or has offered to pay his monthly mortgage payments into an escrow account as an act of good faith to support his intention to tender.   *See* Opp. Br. to Plaintiff's *Ex Parte* Application for Stay and Injunction on Appeal at 4. In fact, Pacheco has admitted that his current monthly income is less than $4,000.   Pacheco Deposition at 85:20-92:20.   Given that his current monthly mortgage payment is $3,469.17, it is reasonably certain that he lacks the ability to make such payments.   Aguirre Decl. ¶ 4.

1   factual basis for his own estimate of the Property's current value and failed to identify any of the

2   factors he considered in forming his opinion. *Id.* at 7.  The Court reached the same conclusion

3   with respect to Lewis's assertion that Pacheco could refinance his home for at least 90% of the

4   value. *Id.* at 7-8.  Notwithstanding Lewis's status as a licensed real estate broker, there was no

5   indication that his opinion was based reasonably on his perception as required by  Fed. R. Evid.

6   602 and Fed. R. Evid. 701 or that Lewis was aware of or considered relevant factors such as the

7   amount of Pacheco's existing mortgage.

8       Apart from Lewis's declaration, Pacheco offered *no* evidence of his ability to tender.  He

9   argues that a genuine issue of material fact nonetheless existed because throughout the litigation

10  he expressed an "intent" to tender.  On appeal, Pacheco asks, "what quantum of evidence must a

11  borrower produce, with respect to his ability to tender, at the summary judgment stage?"

12  Appellant's Opening Brief at 2 *available at* www.pacer.gov.  This Court concluded that even if

13  Lewis's testimony otherwise were admissible, it would not have been sufficient to raise an issue

14  of fact because Pacheco did not show that Lewis had inspected the Property or had "considered

15  any of the other relevant factors in determining whether [Pacheco] would qualify for a loan (e.g.,

16  [Pacheco's] credit history, income, or loan payment record.)."  MSJ Order at 14 n. 4.  The only

17  evidence of any kind with respect to Pacheco's ability to tender thus was conclusory.

18      Pacheco claims alternatively that instead of granting summary judgment, the Court

19  should have ordered a conditional rescission, allowing him to prove his ability to tender when he

20  actually sought to rescind the Loan.  However, the decision whether to grant conditional

21  rescission is discretionary, and it depends upon the equities of each case.  *Palmer v. Wilson*, 502

22  F.2d 860 at 862 ("The propriety of such a conditional decree of rescission, of course, will depend

23  on the equities present in a particular case").  Courts are not required to extend this opportunity

24  to borrowers where the evidence of ability to tender is weak or non-existent, as it was here.

25  *Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1142 (11th Cir. 1992) ("the district court

26  should consider traditional equitable notions, including such factors as the severity of [the

27  lender's] TILA violations and whether [the borrower] has the ability to repay the principal

28  amount.").

1

2    **2.   Whether the Non-Moving Party Must Carry the Burden of Production on**
     **Summary Judgment**

3         Pacheco also claims on appeal that he should not have been required to carry the burden

4    of production as the non-moving party on a motion for summary judgment.  He relies upon

5    *Dawkins v. Green*, 412 F.2d 644, 646 (5th Cir. 1969) in which the Fifth Circuit concluded that

6    summary judgment was improper where the moving party offered no probative evidence, even

7    though the non-moving party failed to introduce contradictory affidavits.  *Id.* at 646.

8         However, as Defendants point out, *Dawkins* was decided prior to *Celotex Corp. v.*

9    *Catrett*, 477 U.S. 317 (1986).  In *Celotex*, the Supreme Court explained that, "the burden on the

10   moving party may be discharged by 'showing'-that is, pointing out to the district court-that there

11   is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  Ninth Circuit

12   decisions subsequent to *Celotex* have applied the same standard.  *See e.g. Nissan Fire & Marine*

13   *Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) ("Under . . . *Celotex*

14   . . . [t]he moving party may produce evidence negating an essential element of the nonmoving

15   party's case, or, after suitable discovery, the moving party may show that the nonmoving party

16   does not have enough evidence of an essential element of its claim or defense to carry its

17   ultimate burden of persuasion at trial."); *Farrakhan v. Gregoire*, 590 F.3d 989, 1003 (9th Cir.

18   2010), ("Put differently, when the nonmoving party has the burden of proof at trial, as Plaintiffs

19   do here, the party moving for summary judgment. . . need only point out that there is an absence

20   of evidence to support the nonmoving party's case.").

21        In their motion for summary judgment in this case, Defendants presented evidence that

22   Pacheco could not tender back the loan proceeds through refinancing alone, and they pointed out

23   correctly that he offered no admissible evidence to the contrary.[10]

24   ─────────────────

25        [10] Defendants offered a Broker Price Opinion dated November 19, 2009, estimating the
     value of the property at approximately $455,000.  Aguirre Decl. ¶ 7., Ex. A.  Although Pacheco
26   claimed that this was non-probative, outdated evidence, the date of valuation went more to the
     weight of the evidence than to its relevance or probative value.  The Court concluded, based
27   upon the only admissible evidence in the record, that Plaintiff would not be able to refinance the
     property at a value sufficient to repay the loan proceeds.
28

9

**3.   Whether Courts May Consider Ability to Tender as an Element of a TILA Claim**

For the first time, Pacheco asserts that a serious legal question also exists with respect to an argument made on appeal by the National Consumer Law Center ("NCLC") appearing as amicus curiae.  NCLC argues that the Court erred by treating the ability to tender as an element of a TILA claim.  Amicus Brief at 15 *available at* www.pacer.gov.  The Ninth Circuit has stated that, "[i]n the absence of exceptional circumstances,. . . [it does] not address issues raised only in an amicus brief."  *Artichoke Joe's California Grand Casino v. Norton*, 353 F.3d 712, 719 n. 10 (9th Cir. 2003).  This Court would observe only that this new argument does not affect its analysis of Pacheco's likelihood of success on the merits in this case.

NCLC argues that courts may not require a consumer to submit evidence of ability to tender before reaching the substantive merits of a rescission claim.  However, in the first sentence of its opinion in *Yamamoto*, the Ninth Circuit defines the issue to be decided as "whether a court may order borrowers who seek recission [sic] of a mortgage under the Truth in Lending Act (TILA), 15 U.S.C. § 1635, to show that proceeds can be tendered if they prevail." 329 F.3d at 1168.  Pacheco himself characterizes *Yamamoto* as, "[giving] to the trial court the power to dismiss a TILA rescission claim 'for the inability [of the borrower] to tender.'" Appellant's Opening Brief at 8 (quoting *Yamamoto* at 1171.) *available at* www.pacer.gov. Moreover, the 1980 amendments to TILA include an express provision allowing courts to modify the rescission sequence.  Truth in Lending Simplification and Reform Act, Pub. L. No. 96-221, 94 Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. § 1635(b) (1988)). Following the amendments, Regulation Z, which tracks and implements TILA's provisions, was modified accordingly.  *See* 12 C.F.R. § 226.23.  Both *Yamamato* and TILA give courts the authority to determine whether a borrower seeking rescission can make good on his obligations before depleting judicial resources or fashioning a meaningless remedy.

Case No. C 08-03002 JF (HRL)
ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR STAY AND INJUNCTION PENDING APPEAL (JFLC1)

**C.  Balance of Hardships**

It is not obvious that the balance of hardships tips sharply in Pacheco's favor.  Although Pacheco faces imminent foreclosure, it has been two years since he made his last mortgage payment in April 2009.  Pacheco claims that if the Court were to grant the instant application, Defendants would lose only the "time value of money."  Plaintiff's *Ex Parte* Application for Stay and Injunction On Appeal at 6.  In reality, Defendants face the additional risk that the value of Pacheco's home will decrease while the case is on appeal.

**D.  Public Interest**

Pacheco urges the Court to consider the hardship of all those who will be affected directly or indirectly by this Court's judgment, as well as the general public interest.  Plaintiff's *Ex Parte* Application for Stay and Injunction On Appeal at 8 (referencing *Golden Gate Restaurant Assn.* at 1126).  While the Court recognizes that its ruling may have some effect on the outcome of other TILA rescission claims, Pacheco has not shown that it is in the public interest to enjoin foreclosures on the basis of an unproven TILA rescission claim where the borrower has not shown even a significant likelihood that he could meet the legal requirements of rescission.  It is axiomatic that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief ."  *Winter* 129 S. Ct. 365 at 376.

**IV. Order**

Based upon the standard of review articulated by the Ninth Circuit in *Alliance*, Pacheco has not shown that he is entitled to injunctive relief or that a stay of this Court's judgment pending the disposition of his appeal is warranted.  Accordingly, the instant application is DENIED.

IT IS SO ORDERED.

DATED: February 3, 2011

JEREMY FOGEL
United States District Judge